329 So.2d 238 (1976)
Jose Martin ORTIZ, t/a Latin American Distributors
v.
E. Lee AGERTON, Collector of Revenue, State of Louisiana.
No. 7239.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1976.
Rehearing Denied April 13, 1976.
*239 Joseph J. Laura, Jr., New Orleans, for plaintiff-appellee.
Ben F. Day, Baton Rouge, Robert L. Royer, Alexandria, Donald C. Theriot, Baton Rouge, Albert S. Rose, New Orleans, and James W. Murray, Baton Rouge, for defendant-appellant, Collector of Revenue, State of Louisiana.
Before REDMANN, STOULIG, SCHOTT, MORIAL and BEER, JJ.
SCHOTT, Judge.
After plaintiff was assessed for delinquent sales taxes pursuant to LSA-R.S. 47:301 et seq. he appealed to the Board of Tax Appeals for a redetermination of the assessment pursuant to R.S. 47:1431. He claimed that the transactions in question were exempt pursuant to R.S. 47:305.10 which provides in part as follows:
"There shall be no sales tax due upon the sales at retail of tangible personal property purchased within Louisiana for use exclusively beyond the territorial limits of Louisiana . . .
"The Collector of Revenue shall promulgate regulations for the implementation of this Section."
After a hearing the Board dismissed the assessment for the apparent reason that the sales were exempt as export sales under the statute. The Collector then filed a petition for judicial review of the Board's decision, pursuant to R.S. 47:1434. From a judgment of the District Court, affirming the judgment of the Board of Tax Appeals, the Collector has taken this appeal.
The provisions of R.S. 47:1435 are pertinent:
"The district courts shall have exclusive jurisdiction to review the decisions or judgments of the board, and the judgment of any such court shall be subject to further appeal, suspensive only, in accordance with law. If a suspensive appeal is taken from a judgment of the district court no further bond need be posted and the bond originally posted remains in full force and effect to guarantee the payment of any tax, interest, and penalty until final decision of the court.
"Upon such review, such courts shall have the power to affirm or, if the decision *240 or judgment of the Board is not in accordance with law, to modify, or to reverse the decision or judgment of the board, with or without remanding the case for further proceedings as justice may require."
The record before us consists of the pleadings filed before the Board of Tax Appeals including correspondence between the parties and a transcript of testimony taken before the Board at a hearing on August 26, 1971. In early correspondence the Collector's auditor informed defendant's counsel relative to the claimed exemption. "A sale for export is described in Article 2-28 as packaged by the seller marked for export and then delivered to a common carrier and exported. Any sales not in strict conformity with this article are considered taxable as a retail sale." The transcript, consisting of the testimony of an auditor for the Collector and the plaintiff together with much argument and discussion among counsel and members of the Board, shows that the implementation of Article 2-28 of the Collector's regulations forms the crux of this dispute.
The Collector insists upon literal compliance with his regulation while the taxpayer contends that methods he employed to insure that the sales were bona fide export sales were adequate to bring them within the purview of the exemption provided by R.S. 47:305.10 even though the regulation was not strictly and literally complied with. In the words of plaintiff's counsel at the hearing before the Board relative to the regulation, ". . . it is not set up by law that if you don't package it and put it on that plane and ship it then you can't have your tax exemption I don't think that is the purpose of the law."
The auditor testified that he inspected each sale on which the exemption was claimed over the 2½ year period in question, looking for the bill-of-lading mentioned in the regulation and in the absence of such disallowed the exemption. He found that defendant did show on most of the invoices a passport number or some other indication that the purchaser was in fact a foreigner. He admitted that defendant kept a careful record of the items he claims are exempt as opposed to the items which were to be used in this country. He found that some of the items were delivered to an airline and some were put on the docks, but he disallowed any and all items for which export documentation was not produced. Counsel for the Collector took the position at the hearing that the passport is not sufficient because the purchaser can stay in the country for sometime with a passport and his mere declaration that he is leaving on the next plane or ship does not necessarily mean that he is.
Plaintiff testified that some of the merchandise sold on the disputed invoices was delivered to and the money was collected at the wharf. The names of the boats and immigration card numbers were noted on some invoices and the foreign destination was secured in many by a sworn affidavit of the purchaser on the invoice. This affidavit stated, "I hereby swear that these goods are going to leave the United States of America." Counsel for the Collector stipulated to the presence of this affidavit, but he contended that this does not necessarily mean that the items were placed irretrievably in the stream of foreign commerce.
The picture emerging from the hearing is somewhat confusing, but it appears that from an undetermined number of sales by plaintiff in the period involved, assessments were made in three categories, which are the subject of this suit. In the first category are cash sales to foreigners of items of clothing picked up by them at plaintiff's store. In the second are cash sales to foreigners, mostly seamen, of small appliances, such as radios and tape recorders, and picked up by them at plaintiff's store. In the third category are cash sales to foreign seamen of heavy appliances *241 which were delivered by plaintiff to the docks. There is nothing in our records to show what portion of the assessment covered what category of sales, and because we have reached different conclusions with respect to the different categories it becomes necessary to remand this case to the Board of Review for further proceedings in accordance with R.S. 47:1435.
The exemption provided by R.S. 47:305.10 claimed by plaintiff is required by Art. 1. § 10, cl. 2 of the Constitution of the United States, which provides as follows:
"No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws: and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Control of the Congress."
The Collector is authorized to promulgate regulations implementing R.S. 47:305.10. Any such regulation must be consistent with the Constitutional provision exempting exports from state sales tax. If the regulation relied upon by the Collector is inflexibly and strictly applied in every case it becomes obvious that some bona fide export sales would become taxable in violation of the Constitution.
On the other hand, some reasonable regulations are necessary to guard against the fraudulent invocation of the exemption and to secure a fair and uniform system of sales tax collection.
In interpreting this provision of the Constitution the Supreme Court of the United States has held that the exemption from state taxes applies where there is a certainty that the goods are headed to sea and that the process of exportation has started. Richfield Oil Corp. v. The State Board of Equalization, 329 U.S. 69, 67 S.Ct. 156, 91 L.Ed. 80 (1946). In that case it was held that such a certainty is best proved by the fact that the goods have been delivered to a common carrier for that purpose, but the degree of certainty may exist even though no common carrier is involved.
In Empresa Siderurgica v. County of Merced, 337 U.S. 154, 69 S.Ct. 995, 93 L.Ed. 1276 (1949), the Supreme Court of the United States said:
"It is the entrance of the articles into the export stream that marks the start of the process of exportation. Then there is certainty that the goods are headed for their foreign destination and will not be diverted to domestic use. Nothing less will suffice."
Our own Supreme Court in Trestman v. Collector of Revenue, 233 La. 437, 96 So.2d 713, did not consider the fact that sales were made to foreign seamen as sufficient to show a certainty that they were export sales and they were presumed to be retail sales and subject to taxation.
These authorities are dispositive of plaintiff's argument with respect to the category one sales. The mere fact that the customer who picked up articles of clothing at plaintiff's store was a foreigner or seaman with a passport or immigration card did not necessarily place the articles in the export stream. There was no certainty that these goods were headed for a foreign destination after they left plaintiff's store. The same is true even if the customer displayed an airline ticket for a foreign destination or made an affidavit of intention to take the goods abroad. We do not hold that the regulation's delivery to a common carrier is the only means by which the exemption comes into being but plaintiff's methods with respect to the clothing sales do not support an invincible claim to the exemption. Because the record does not show what part of the assessment was made for sales in this category *242 the case must be remanded to the Board for determination of the issue.
As to the sale of small appliances picked up by foreigners and seamen in plaintiff's store, it was argued at the hearing before the Board that these appliances could not be used in the United States because of their voltage and electrical phase cycle. There is no evidence to show that these appliances could not be used with a transformer or adapter and it would constitute speculation on our part to hold that such is the case. If they could be used the same rule applies to these small appliances as applies to the sales of clothing, and the exemption would not apply. On the other hand, if it can be shown that it would have been economically and practically unfeasible to adapt these appliances for use in the United States there may be a factual basis for finding the certainty that they were bound for export. The case will be remanded to the Board of Review so that the parties may introduce evidence on this point.
As to the sales of heavy appliances, plaintiff testified that once these things were delivered to the docks they could not be removed. He said:
"The emigration in this country clearly says, as well as the United States or the New Orleans Chamber of Commerce for the Wharfthat anything that pass the limits of the wharf and it's put there, you can't take it back, sir. For you to take back those goods you have to file documents. They would never allow to take it back."
While this testimony tends to show the certainty that these goods were bound for export it is undocumented and uncorroborated and does not meet the test for certainty laid down in the cited cases from the United States Supreme Court. However, in the interest of justice as provided for in R.S. 47:1435 the case will be remanded to the Board of Review for additional evidence on that point, as well.
Accordingly, the judgment appealed from is reversed and set aside and the case is remanded to the Board of Tax Appeals for further proceedings consistent with the views we have expressed herein. All costs to date are to be paid by plaintiff. Additional costs are to await the final determination of the case after the hearing before the Board of Tax Appeals on remand.
REVERSED AND REMANDED.
REDMANN, J., dissents.
REDMANN, Judge (dissenting).
The legislature has commanded that "There shall be no sales tax due upon the sale at retail of tangible personal property purchased within Louisiana for use exclusively beyond the territorial limits of Louisiana." R.S. 47:305.10. That section recognizes the practical difficulty of distinguishing sales for use outside the state, and therefore adds that the collector "shall promulgate regulations for the implementation of this Section" (emphasis added).
The collector's regulation 2-28 does not "implement" the statute's provision relative to use outside Louisiana, because it exempts only sales for export outside the United States. Similarly, the regulation does not implement the statute's provision because it requires exportation by common carrier. The regulation is not an implementation, a carrying out, of the statute: it is a defeating, a veto, of the statute. It is patently beyond the collector's authority and must be ignored insofar as it would impose taxes.
The question, then, is whether § 305.10 covers appellee's sales to foreign seamen. The fair answer is that it does, because appellee has made a much more rational effort to comply with its terms than the collector has. It is true that a seaman, with a foreign passport and a temporary immigration permit for the few days his ship is in port, may buy articles for friends in Louisiana rather than for use exclusively outside Louisiana. So may Mississippi residents.
*243 The legislature, in effect, told the collector to solve this difficulty by regulation. That the collector has apparently refused to do so is no justification for making appellee pay a tax that the legislature has said shall not be due.