615 So.2d 423 (1993)
Leon R. TARVER, II, Secretary of the Department of Revenue and Taxation, State of Louisiana
v.
WORLD SHIP SUPPLY, INC.
No. 92-CA-0812.
Court of Appeal of Louisiana, Fourth Circuit.
February 26, 1993.
Writ Denied March 26, 1993.
*424 James C. Russell, Jr., Marlin N. Gusman, Marlon V. Harrison, Susan Crapanzano Edelen, Baton Rouge, for plaintiff-appellant.
Jerome J. Reso, Jr., John A. Rouchell, Beverly Klundt Baudouin, Baldwin & Haspel, New Orleans, amicus curiae.
William A. Porteous, III, John J. Hainkel, Jr., Porteous, Hainkel, Johnson & Sarpy, New Orleans, for defendant-appellee.
Before SCHOTT, C.J., and BARRY and PLOTKIN, JJ.
SCHOTT, Chief Judge.
The issue in this case is whether the state may collect tax on the sale of supplies to the operators of foreign ships bound for foreign ports where the supplies are for use and consumption during the voyage in the absence of a specific statutory exemption from the tax. We hold that it may not.
This is an action by the Secretary of the Department of Revenue and Taxation to collect sales taxes for the period July 1, 1986 through June 30, 1989. The parties stipulated to the following facts:
Each sale at issue in this litigation involved the sale of goods by World Ship Supply, Inc., to the owners and operators of foreign flag vessels calling in Louisiana. Such goods were for use onboard the said vessels during their voyages and these goods were delivered to the foreign flag vessels. If these sales are taxable, the amount of taxes owed on the sales would be $48,070.51.
LSA-R.S. 47:305.1(B) which is part of Chapter 2 of subtitle II of Title 47 of the Revised Statutes provides for an exemption from sales tax with respect to:
... materials and supplies purchased by the owners or operators of ships or vessels operating exclusively in foreign or interstate coastwise commerce, where such materials and supplies are loaded upon the ship or vessel for use or consumption in the maintenance and operation thereof; ...
Thus, as long as this section was in effect the exemption applied, but in 1986 the legislature adopted Resolution No. 55 which provided in pertinent part as follows:
THEREFORE, BE IT RESOLVED that the Legislature of Louisiana hereby suspends the exemptions from the additional one percentum tax levied pursuant to R.S. 47:331 including but not limited to the exemptions provided in Chapter 2 of Subtitle II of Title 47 of the Louisiana Revised Statutes of 1950 insofar as they are made applicable to the additional one percentum tax levied pursuant to R.S. 47:331 by virtue of the provisions of R.S. 47:332 and suspends R.S. 47:332(B), (C), and (D).
* * * * * *
BE IT FURTHER RESOLVED that this suspension shall become effective on July 1, 1986, and shall extend through June 30, 1987.
*425 At the Extraordinary Session of 1986 the legislature adopted Act 20 which provided in pertinent part as follows:
B. Notwithstanding any other provision of law to the contrary, including but not limited to any contrary provisions of this Section, for the period January 1, 1987 through June 30, 1988, the tax exemptions provided in Chapter 2 of Subtitle II of Title 47 of the Louisiana Revised Statutes of 1950 shall be inapplicable, inoperable and of no effect on the tax imposed and levied pursuant to the provisions of R.S. 47:331.
By suspending the exemption provided by R.S. 47:305.1(B) these legislative enactments would make World Ship clearly liable for the sales taxes for the period July 1, 1986 to June 30, 1988 in the absence of constitutional and other statutory provisions which might prevent the collection of the tax and which will be discussed hereafter. However, before we reach that discussion we must first examine other legislative enactments to ascertain the status of R.S. 47:305.1(B) for the period July 1, 1988 through June 30, 1989. The enactments in question are one bill and one concurrent resolution adopted in the 1988 session of the legislature and a bill adopted in the Second Extraordinary Session of 1988.
Act 842 of 1988 provided in pertinent part as follows:
F. Notwithstanding any other provision of law to the contrary, including but not limited to any contrary provisions of this Chapter, for the period August 1, 1988 through June 30, 1989, the exemptions to the tax levied pursuant to the provisions of this Section, except for those exemptions provided by R.S. 47:305(A)(1), (B), (D)(1)(f), (j), (k), (l), (m), (s), (G), 305.1, 305.2, 305.3, 305.8, 305.15, 305.20, 305.37, 305.38, 305.46, and R.S. 51:1787, shall be in applicable, inoperable and of no effect.
According to the Act the pertinent exemption in R.S. 47:305.1(B) was excluded from the suspension of exemptions so that it remained in effect. However, in the regular session of 1988 the legislature also adopted House concurrent Resolution No. 163 which provided in pertinent part as follows:
THEREFORE, BE IT RESOLVED that the Legislature of Louisiana does hereby suspend the exemptions from the additional one percentum tax levied pursuant to R.S. 47:331, including but not limited to the exemptions provided in Chapter 2 of Subtitle II of Title 47 of the Louisiana Revised Statutes of 1950, insofar as they are made applicable to the additional one percentum tax levied pursuant to R.S. 47:331 by virtue of the provisions of R.S. 47:332(A).
* * * * * *
BE IT FURTHER RESOLVED that this suspension shall be effective on July 1, 1988, and shall extend through June 30, 1989....
These provisions were apparently in conflict with respect to the suspension of the exemption in question, but this conflict was resolved with the passage of Act 11 of the Second Extraordinary Session of 1988 which provided in pertinent part as follows:
F. Notwithstanding any other provision of law to the contrary, including but not limited to any contrary provisions of this Chapter, for the period August 1, 1988 through June 30, 1989, the exemptions to the tax levied pursuant to the provisions of this Section, except for those exemptions provided by R.S. 39:467 and 468, R.S. 47:305(A)(1), (B), (D)(1)(f), (j), (k), (l), (m), (s), (G), 305.1, 305.2, 305.3, 305.8, 305.15, 305.20, 305.37, 305.38, 305.46, and R.S. 51:1787, shall be inapplicable, inoperable and of no effect.
We have no doubt that the legislature intended for Act 11 to supersede Concurrent Resolution No. 163 because Section 2 of the Act specifically clarifies portions of the resolution which deal with provisions of the law other than the one here under consideration. But the last expression of the legislature deletes the exemptions provided by R.S. 47:305.1 from the general suspension of exemptions. Consequently, for the period August 1, 1988 through June 30, 1989 the exemption clearly applies.
*426 We now return to the more complicated question of whether the sales between June 1, 1986 through July 31, 1988 are subject to sales tax irrespective of the suspension of the exemption, as well as the sales between August 1, 1988 and June 30, 1989, even if the above analysis were flawed. The answer lies in other statutory provisions and the application of Article I, Section 10, Clause 2 of the Constitution of the United States.
The Louisiana law governing the imposition and collection of Sales Tax is in Chapter 2 of Subtitle II of Title 47. R.S. 47:305 entitled "Exclusions and Exemptions for the tax" contains the following:
E. It is not the intention of the Chapter to levy a tax upon articles of tangible personal property imported into this state, or produced or manufactured in this state for export; nor is it the intention of this Chapter to levy a tax on bona fide interstate commerce.... It is, however, the intention of this Chapter to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this State, of tangible personal property after it has come to rest in this state and has become a part of the mass of property in this state.
If this section were construed so as to provide an exemption it could fall within the ambit of the legislation referred to above which suspended all of the exemptions in Chapter 2 for the period from July 1, 1986, through July 31, 1988. However, we construe this section to provide for an exclusion rather than an exemption. The difference can readily be seen by reference to the following from section 3.1 of Louisiana Sales & Use Taxation by Bruce J. Oreck:
Two well established rules of statutory construction come into play when considering exclusions and exemptions. A tax exemption is a provision which exempts from tax a transaction which would, in the absence of the exemption, otherwise be subject to tax. That is, there has been a statutory decision not to tax a certain transaction which is clearly within the ambit and authority of the taxing statutes to tax. On the other hand, an exclusion relates to a transaction which is not taxable because it falls outside the scope of the statute giving rise to a tax, ab initio. Transactions excluded from tax are those which by the language of the statutes are defined as beyond the reach of the tax.
The author goes on to say, citing a wealth of authority, that while exemptions from taxation are strictly construed against the taxpayer, statutes imposing the tax, of which exclusions are an integral part, are construed liberally in favor of the taxpayers and against the taxing authority.
R.S. 47:305(E) excludes from sales tax property bound for export. The question becomes whether these supplies are for export when they are going to be consumed on a voyage to a foreign port as distinguished from goods, that are carried to the foreign port and delivered there. Following the rule that exclusions are to be liberally construed in favor of the taxpayer we conclude that the goods, once placed on a foreign ship bound for a foreign port, were exported from the state and excluded from sales tax.
This interpretation comports with Art. 1 Section 10 of the United States Constitution the Export-Import clause which provides:
No state shall without the consent of the Congress, lay any imports or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws ...;
and the historic role of the federal government in regulating foreign commerce by virtue of the Import-Export clause of the Constitution. See for example the discussions in Louisiana Land & Exploration Co. v. Pilot Petroleum Corp., 900 F.2d 816 (5th Cir.1990), cert. den. Alabama Department of Revenue v. Pilot Petroleum Corp., 498 U.S. 897, 111 S.Ct. 248, 112 L.Ed.2d 207 (1990); Michelin Tire Corp. v. Wages, 423 U.S. 276, 96 S.Ct. 535, 46 L.Ed.2d 495 (1976); Sales Tax Dist. No. 1 Lafourche Parish v. Express Boat Co., 500 So.2d 364 (La. 1987). See also Oreck, Ibid. *427 Section 3.6. In International Export Packers of Louisiana v. State, 422 So.2d 1361 (La.App. 1st Cir.1982) the court held that the legislature adopted R.S. 47:305(E) (then designated 305(5)) in order to comply with the Export-Import clause of the constitution. In Ortiz v. Agerton, 329 So.2d 238 (La.App. 4th Cir.1976), this court reached the same conclusion with respect to the first use exemption of R.S. 47:305.10, that the exemption from sales tax for property purchased in Louisiana for use exclusively beyond the territorial limits of the state is required by the Export-Import clause.
Accordingly, the judgment appealed from is affirmed.
AFFIRMED.
PLOTKIN, J., concurs with written reasons.
PLOTKIN, Judge, concurs with written reasons:
Although I agree with the majority's decision affirming the trial court's finding that consumable items sold to foreign flag ships were not subject to Louisiana's sales tax provisions, I disagree with much of the analysis. Accordingly, I concur.
The real issue here is whether the State of Louisiana has the authority to levy sales taxes on consumable ship supplies (food, clothing, medicine) sold and delivered to foreign flag vessels in foreign or interstate commerce.
The determination of this issue is complex, because several levels of analysis are required.[1] Generally, Louisiana law imposes a sales tax on "the sale at retail, the use, the consumption, the distribution, and storage for use of consumption in this state, of each item or article of tangible personal property." LSA-R.S. 47:302(A). "Tangible personal property" is defined as "personal property which may be seen, weighed, measured, felt or touched, or is in any other manner perceptible to the senses." LSA-R.S. 47:301(16). Unquestionably, the items in question here qualify as "tangible personal property" under that definition.
Since these items fit the definition of "tangible personal property," which is generally subject to the sales tax provisions, they may be taxed by the State of Louisiana unless they qualify for either an exemption from taxation or an exclusion from taxation. Both exemptions and exclusions from the sales tax provisions are set out in LSA-R.S. 47:305-47:305.49. Although those provisions do not differentiate between an exemption and an exclusion, the difference has been explained as follows:
Two well established rules of statutory construction come into play when considering exclusions and exemptions. A tax exemption is a provision which exempts from tax a transaction which would, in the absence of the exemption, otherwise be subject to tax. That is, there has been a statutory decision not to tax a certain transaction which is clearly within the ambit and authority of the taxing statutes to tax. On the other hand, an exclusion relates to a transaction which is not taxable because it falls outside the scope of the statute giving rise to a tax, ab initio. Transactions excluded from tax are those which by the language of the statutes are defined as beyond the reach of the tax.
Oreck, Louisiana Sales & Use Taxation § 3.1 (State Tax Press 1992). As the majority points out, both an exemption and an exclusion are involved in determination of whether the items in question in this case are subject to taxation.
I believe that the first portion of the majority's analysis, concerning the suspension of the exemption from taxation provided by LSA-R.S. 47:305.1(B), is correct. Obviously, *428 the consumables at issue here fit under the category of "materials and supplies purchased by the owners or operators of ships or vessels operating exclusively in foreign or interstate coastwise commerce, where such material and supplies are loaded upon the ship or vessel for use or consumption in the maintenance and operation thereof." Id. Such items are generally exempted from taxation by LSA-R.S. 47:305.1(B). However, since those exemptions have been suspended by the legislature, they no longer apply and may not be used to prevent the State from levying taxes in this case.
The next level of the analysis is whether the taxes are prohibited by an exclusion from taxation. LSA-R.S. 47:305(E) declares, in pertinent part, that the sales tax provision is not intended to "levy a tax on bona fide interstate commerce." That declaration unquestionably limits the scope of the taxing power of the State of Louisiana, making any transaction which falls under the provision "not taxable because it falls outside the scope of the statute giving rise to a tax" and thus is "beyond the reach of the tax." Oreck, supra. Thus, the problem with the proposed taxes involving interstate commerce is not that Louisiana lacks the power to levy any taxes of any type on such transactions under federal law, but is simply the fact that the Louisiana legislature has chosen to limit the State's taxing authority and to prohibit taxation of those transactions, even if it has the right to levy such taxes under federal law.[2]
Thus, the final level of analysis for determining whether these transactions are taxable is simply a consideration of whether they fit into the category of "bona fide interstate commerce." Unquestionably, the transactions at issue here are "bona fide interstate commerce" since the parties stipulated that all the tangible personal property involved was delivered to foreign flag vessels. Under general principles of international law, a foreign flag vessel is considered a fictitious part of the territory whose flag she flies. United States v. Flores, 289 U.S. 137, 53 S.Ct. 580, 77 L.Ed. 1086 (1933). Thus, any sale to a foreign flag vessel falls under the rubric of interstate commerce, just as a sale to someone in another state or country is a part of interstate commerce.
The majority reaches the same conclusion in this case through application of the principle of statutory construction that exclusions should be interpreted liberally in favor of taxpayers and against the taxing authority. I believe it is unnecessary to resort to this principle in this case since the transactions here are clearly a part of interstate commerce.
Additionally, I am concerned about the majority's rather confusing discussion of "supplies for export" as distinguished from "goods." Certainly, the items involved here are not ship "cargo" and in that sense they are not "goods" for export. Taxes should be excused in this instance for one very clear reasonbecause the transactions to fictional foreign countries are interstate commercenot because the particular goods in question fall into a certain category.
Finally, I would note that the same result would not attach to sales of supplies to vessels which operate only in Louisiana waters because they would not qualify as "bona fide interstate commerce." Although such transactions would unquestionably have been excluded from taxation by the exemption in LSA-R.S. 47:305.1, they do not fall under the rubric of the exclusion in LSA-R.S. 47:305(E). Since the exemption has been suspended, such supplies would be subject to taxation.
NOTES
[1] For example, a complete analysis of this issue would require consideration of whether the imposition of such taxes is prohibited by federal law as established by the jurisprudence interpreting both the commerce clause and the export-import clause of the United States Constitution. However, because taxation of these items is unquestionably prohibited by Louisiana law, as explained below, discussion of federal regulation in this area is unnecessary. In other words, Louisiana law prohibits taxation of the items in question, even if we assume that such taxation would be permissible under federal law.
[2] The parties to this action devote much of their briefs to a consideration of whether the transactions here are taxable under federal law as interpreted in the United States Supreme Court's decision in Complete Auto Transit v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), which lifted some of the restrictions on taxation of transactions involved in interstate commerce. However, a determination of whether the transactions at issue here fit in the category for which taxation is allowed under that decision is not an issue since Louisiana law prohibits any taxation of transactions involving "bona fide interstate commerce."