WILLOW BEND VENTURES, LLC

VERSUS

COLLECTOR, ST. JOHN THE BAPTIST
PARISH, SALES AND USE TAX OFFICE

NO. 18-CA-660

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE BOARD OF TAX APPEAL
STATE OF LOUISIANA
NO. L00003,
HONORABLE CADE R. COLE, JUDGE PRESIDING

August 14, 2019

**FREDERICKA HOMBERG WICKER**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Robert A. Chaisson, and Hans J. Liljeberg

<u>**AFFIRMED**</u>
    **FHW**
    **RAC**
    **HJL**

COUNSEL FOR PLAINTIFF/APPELLANT,
WILLOW BEND VENTURES, LLC
    Robert S. Angelico
    Cheryl M. Kornick

COUNSEL FOR DEFENDANT/APPELLEE,
COLLECTOR, ST. JOHN THE BAPTIST PARISH, SALES AND USE TAX
OFFICE
    Patrick M. Amedee
    Catherine Masterson

**WICKER, J.**

Appellant, Willow Bend Ventures, L.L.C., (hereinafter "Willow Bend") appeals the Board of Tax Appeals' judgment awarding St. John the Baptist Parish Sales and Use Tax Collector (hereinafter "the Collector") $1,479,914.17 in owed taxes, penalties, interest, and attorney fees related to the sale of dirt from Willow Bend's borrow pit located in St. John the Baptist Parish. For the following reasons, we affirm the Board's judgment.

## FACTUAL BACKGROUND

This litigation arises out of past due taxes allegedly owed on the sale of processed dirt from Willow Bend's borrow pit located in St. John the Baptist Parish. Following Hurricane Katrina, Willow Bend purchased a 540-acre piece of property in the parish and underwent an extensive certification process to have its processed dirt sold on the property certified to be used in Corps of Engineers (COE) projects. On May 23, 2014, the Collector issued a "Notice of Assessment" which reflected that Willow Bend owed a total amount of $1,605,244.42 to the Collector in taxes, penalties, and interest for the tax period of January 1, 2010 to June 30, 2013.

On June 26, 2014, Willow Bend filed a "Petition for Redetermination of Assessment" with the Board of Tax Appeals, representing that it had been aggrieved by the Collector's "improper assessment of St. John Parish sales and use tax, interest and penalties." In its petition, Willow Bend alleged that, because the dirt sold from its pit was used for COE projects, the sales at issue were not "retail sales" as defined under La. R.S. 47:301(10)(g) and, thus, are not subject to sales and use tax. On March 5, 2015, the Collector filed a reconventional demand against Willow Bend additionally seeking attorney fees pursuant to La. R.S. 47:337.13.1.

The matter proceeded to trial on May 31, 2016 and June 1, 2016.

At trial, Dr. Bob Thorn testified that Willow Bend retained him in December 2007 to aid in the permitting and certification process for its borrow pit. He explained the certification process, which is required for a vendor to be approved to sell dirt for use in COE hurricane protection levee projects. He further testified that COE project contractors would receive a list of COE-approved borrow pits and that Willow Bend expended a great deal of resources to obtain certification for its 540-acre pit.

Mr. Wayne Fletcher testified that he worked closely with the formation of Willow Bend after Hurricane Katrina and was in communication with the COE during that time period as well. He testified that the dirt business following Hurricane Katrina was lucrative and that the primary purpose behind the development and certification of the Willow Bend borrow pit, which he estimated at a cost of $7.5 to $8 million dollars, was to sell dirt to be used for COE projects. He further testified that contractors not involved in COE projects would not have been interested in purchasing dirt from Willow Bend, as it was priced higher than dirt at non-certified pits.

In his testimony, Mr. Fletcher examined the invoices and contracts introduced into evidence to attempt to establish links between the customers' contracts or invoices and various COE projects. Mr. Fletcher discussed thirty customers' contracts or invoices in his testimony. The documents introduced into evidence reflected that while some of the customers had contracts or invoices with clear references to a specific COE contract, other customers' invoices reflected vague descriptions of various projects (such as the term "airport" or "Chalmette") with no reference to a COE project. Additionally, various invoices referenced a COE contract or code but the evidence reflected that the dirt purchaser was not a COE-approved contractor provided on the COE project "Master List" and Willow Bend provided no subcontract or any evidence to show a relationship between the

COE project and the dirt purchaser. Moreover, the evidence reflected that, as to some of the invoices that related to a known COE project and contractor, Willow Bend unnecessarily collected, but failed to remit, taxes on those invoices. Willow Bend further acknowledged that other customers clearly had no connection to any COE projects.[1]

Mr. Thomas Hook, a representative of Assured Compliance, Inc., testified that he works for a third-party administrator that conducts audits for the Collector. He testified that he participated in the audit process for the Willow Bend audit at issue. In his testimony, Mr. Hook also thoroughly discussed each customer's contract and/or invoices to explain whether the customers' invoices or contracts made any reference to any COE projects. He acknowledged that some of the customer contracts did involve COE projects, and that his office properly excluded that amount of sales from the estimated taxes owed in the Notice of Assessment. He testified that, in reviewing the invoices, he interpreted the invoices to the "benefit of the taxpayer," meaning that if he could recognize a code or reference to a COE project by a COE contractor on the COE Master List, he would exclude those invoices from his calculations. [2]

_____

[1] The following customers purchased dirt from Willow Bend but had no connection to any COE contractor or project: Affolter, Cast and Crew, Champion, Dwayne Julian, Hoyt, Phylway Construction, Reeves Electric, and Ullman Trucking. As to other companies, some invoices referenced a vague description of a possible government project, such as Cycle Construction's invoice referencing "airport." However, no witness could relate the ambiguous invoices to known COE projects. Similarly, Grillot Construction invoices referenced projects such as "Williams Blvd." but do not relate to any known COE project or contractor. As to customers Bucktown Conrtactors and Circle Construction, the Circle Construction's invoices referenced COE projects that were in fact awarded to Bucktown. Willow Bend attempted to introduce into evidence an unsigned, unverified contract between Bucktown and Circle but did not call any witnesses from either Bucktown or Circle Construction to verify any agreement or contract between the companies. Thus, the unsigned document was excluded from evidence upon objection. Other companies' invoices were clearly related to COE projects and contractors—however, Willow Bend unnecessarily collected taxes from those companies and, thus, the Board found Willow Bend responsible to remit the taxes collected under established law. Willow Bend has not appealed that finding.

[2] For example, Mr. Hook acknowledged that DOSI, one customer, had known connections to COE projects and he excluded those transactions from the Notice of Assessment. Further, he testified that any Fleming Construction invoice that referenced "Mereaux" was also excluded, as Mereaux was a known COE project awarded to Fleming. Also, he excluded any invoice to Merrick that referenced the "Ames Pump Station," as he had knowledge of Merrick's involvement in that COE project. Mr. Hook testified:

> this was another case where we applied, I think to the benefit of the taxpayer, if we saw language that was highly similar to a particular project that was listed on the master list, then we gave them that -- credit for that. So that was although obviously what I would like to see is a specific document number or a specific contract number, or specific tie-in to a -- a contract. As an examiner, that's what I would like to see. In this case, because there was language similar to it, then we gave them credit of that.

Tom Hook also testified that, as to some of the contracts or invoices that would generally be excluded as involving COE projects, Willow Bend's records reflected that it had in fact unnecessarily collected from those customers a total of $48,649.12 in sales tax in 2010; $40,959.85 in 2011; and $29,825.63 in 2012 during the audit period. He further testified that, although Willow Bend charged their customers sales tax during this period, it did not remit the taxes collected to the Collector and, thus, that amount actually collected but not remitted was included in the amount owed to the Collector in the Notice of Assessment. Mr. Hook further testified that Willow Bend did not file tax returns or remit any taxes during the three-year audit period at issue.

Ms. Debbie Fletcher testified that she worked in Willow Bend's office during the audit period and handled the billing. She testified that when trucks arrived to pick up dirt, she would issue each truck a ticket providing the amount of dirt loaded and that the ticket would be compared to the amount of dirt delivered to the contractor's site.[3] Mr. Joe Spivey testified that he worked for Willow Bend in the dirt processing during the audit period. He stated that each truck was weighed before and after it was loaded with the dirt and that Willow Bend would issue each customer a ticket indicating the amount of dirt loaded.

On April 11, 2017, the Board of Tax Appeals, the Honorable Cade R. Cole presiding, issued a written judgment in favor of the Collector and against Willow Bend for: $609,471.60 in tax; $182,841.48 in penalties (25% late penalty and 5% negligence penalty); $539,608.90 in interest (1.25% per month); $133,192.19 in attorney fees (10% of tax, penalty, and interest due); and $14,800 in audit costs.

---

[3] Ryan Vicknair testified that he examined Willow Bend's Quickbook files and invoices. He testified that Willow Bend provided trucking for certain companies, Champion, Clark Construction, Gulf Intracoastal Construction, James Construction, and Shavers Whittle Construction. He testified that the total amount of unpaid invoices from these companies totaled $520,835.53 from an invoiced amount of $5,536,359.35. Mr. Vicknair attempted to testify as to his knowledge that certain companies performed work in connection with COE projects, to which the Collector objected. The Board sustained the objection and excluded the testimony of what Mr. Vicknair learned or was told by other companies as hearsay. Similarly, Matt Fletcher testified that he worked in Willow Bend's office. He attempted to testify as to what subcontractors and other customers told him about whether the dirt sold was purchased for COE projects. The testimony was excluded upon objection as hearsay.

The amount of the judgment totaled $1,479,914.17.[4] The Board, in its written

reasons found:

> The Board finds that references to an identifiable Corps
> Contract on an invoice when tied to that Contractor's purchases for its
> own contract will be excluded. The Board finds that where there is
> record proof of a subcontract from a Corps Contractor and the invoice
> ties the subcontractor's purchases to that parent Contract in an
> identifiable way then those purchases will also be excluded. The
> Board finds that to be reasonable enough support for applying the
> §30l(10)(g) exclusion to those transactions. However, the Taxpayer
> has not met its burden of proof where there are no Contract identifiers
> on the invoices (i.e. we have no evidentiary tie from the dirt purchases
> back to the Corps contract averred to cover that purchase).
> The Taxpayer avers that we should go further and 'fill in the
> gaps' of missing information by inference and with supposition. The
> Board disagrees and finds that those sales to subcontractors where the
> subcontractor's direct relationship with a Corps contract was not
> proven by record evidence will be subject to tax. The Collector's post-
> trial memo correctly detailed those items and they total to
> $296,076.60 in tax due (on the part of the sales price labeled
> processing).
> The Board also finds that those generic references to towns or
> places without anything more to tie an invoice to an identifiable Corps
> contract are insufficient to meet Taxpayer's burden of proof. For
> example, the Board has no way of knowing from this record that an
> invoice reference to Chalmette means a particular Corps job in that
> city. The Collector's post-trial memo correctly detailed these items
> and they total $152,385.25 in tax due (on the part of the sales price
> labeled processing).
> The Board also finds that the Taxpayer collected and failed to
> remit $121,009.75 in sales tax on the part of the sales price labeled
> dirt, and that this entire amount is due to the Collector under the long
> established *Sabine Pipe* doctrine.

## DISCUSSION

On appeal, Willow Bend first contends that the Board applied the incorrect

burden of proof and improperly placed the burden on Willow Bend to "follow the

property after the sale and to demonstrate that the taxpayer/purchaser actually used

the property for the excluded or exempted purpose." Willow Bend contends that

---

[4] The Board's judgment found that Willow Bend owed (1) $152,385.25 in taxes due to the Collector on sales for
which Willow Bend presented insufficient evidence to connect an invoice to any COE project; (2) $296,076.60 in
sales tax due related to sales to subcontractors allegedly involved in COE projects but with no evidence to connect
the subcontractors to the project; and (3) $121,009.75 in taxes Willow Bend collected from customers that was never
remitted to the Parish. The Board's decision also found that "processing and loading" is a taxable charge and further
determined that the sale took place in St. John Parish for all sales in which WBV did not provide trucking or
transportation of the dirt.

the Board improperly required it to follow the dirt "days, weeks, or even months after the sale" to qualify for the excluded or exempted provisions of La. R.S. 47:301(10)(g). Willow Bend asserts that, because La. R.S. 47:301–10(g) is a tax exclusion and not an exemption, the statute should be interpreted in favor of the taxpayer and that the Collector should have the initial burden to show that the exclusion does not apply.

La. R.S. 47:302 imposes a sales tax generally on "sale at retail." However, the statute at issue in this matter, La. R.S. 47:301(10)(g) specifically defines a category of transactions that are not included within the definition of "sale at retail." La. R.S. 47:301(10)(g) provides:

> The term "retail sale" does not include a sale of corporeal movable property which is intended for future sale to the United States government or its agencies, when title to such property is transferred to the United States government or its agencies prior to the incorporation of that property into a final product.

Concerning the distinction between a tax exclusion and an exemption, the Louisiana Supreme Court has stated:

> Unfortunately, the Legislature has not provided a statutory definition of either an "exemption" or an "exclusion." According to the leading Louisiana sales tax treatise, a "tax exemption is a provision that exempts from tax a transaction that would, in the absence of the exemption, otherwise be subject to tax. That is, there has been a statutory decision not to tax a certain transaction that is clearly within the ambit and authority of the taxing statutes to tax." Bruce J. Oreck, Louisiana Sales & Use Taxation (2d ed.1996), § 3.1. An exclusion, on the other hand, "relates to a transaction that is not taxable because it falls outside the scope of the statute giving rise to the tax, ab initio. Transactions excluded from the tax are those which, by the language of the statutes, are defined as beyond the reach of the tax." *Id*. Oreck's definitions have been widely adopted by Louisiana courts.
>
> There are also two seemingly contradictory jurisprudential maxims at play. Tax exemptions are strictly construed in favor of the State and "must be clearly and unequivocally and affirmatively established" by the taxpayer. *Vulcan Foundry, Inc. v. McNamara*, 414 So.2d 1193, 1197 (La.1982). Exclusions, on the other hand, are "construed liberally in favor of the taxpayers and against the taxing authority." *Wyesco of Louisiana, LLC v. East Feliciana Parish School Board*, 00–1322, p. 5 (La. App. 1 Cir. 9/28/01), 809 So.2d 401, 404, *citing Tarver v. World*

*Ship Supply, Inc.*, 615 So.2d 423, 426 (La. App. 4 Cir. 1993), *writ denied*, 616 So.2d 672 (La. 1993).

*Harrah's Bossier City Inv. Co., LLC v. Bridges*, 09-1916 (La. 5/11/10), 41 So.3d 438, 446.

The Louisiana First Circuit Court of Appeal has found that the provision at issue, La. R.S. 47:301(10)(g), is a tax exclusion to be interpreted in favor of the taxpayer. *Odebrecht Construction v. Louisiana Dept. of Revenue*, 15-13 (La. App. 1 Cir. 9/18/15), 182 So.3d 132. The Board, in its written reasons for judgment, applied the *Odebrecht* holding and properly found that La. R.S. 47:301(10)(g) is a tax exclusion to be applied in favor of the taxpayer. The Board found:

> The Board agrees with the Taxpayer that this provision is an exclusion from sales and use tax and (not an exemption) and has construed its provisions accordingly.
> In this case, one issue has arisen as to whether that subparagraph's provisions pertain only to one who sells not only directly to the United States government or its agencies, but also to an entity who sells to an entity that partakes in a contract with direct items of cost deemed sales to the United States government or its agencies; that is, a sale by Willow Bend to a subcontractor of a federal contractor. After adhering to the interpretive rule of construing the exclusion in favor of the Taxpayer and the broadness of the statutory language of a sale being "intended for future sale to the United States government or its agencies," the Board finds that these sales can qualify for the exclusion when supported by the facts and evidence… .

Thus, the Board found that the exclusion at issue applies to dirt sold to a subcontractor who contracts with a COE-approved contractor in connection with a COE project. However, upon review of the evidence presented at trial, the Board further found that Willow Bend failed to show that the sales at issue fall within the scope of the exclusion. *See Harrah's, supra,* at 450. Meaning, the Board found that Willow Bend failed to show minimally that the exclusion at issue "encompasses" the purchases or sales at issue. *Id.*

In its written reasons for judgment, the Board pointed out that it excluded taxes due on those sales where the invoices referenced an identifiable COE project

with a known COE-approved contractor. However, for sales with "generic references to towns or places without anything more to tie an invoice to an identifiable Corps contract," the Board found those generic references, with no connection to a COE contractor, to be insufficient to be encompassed within the scope of the La. R.S. 47:301(10)(g), exclusion. On appeal Willow Bend mistakenly contends that the Board held that it must "follow the property" days, weeks, or months after the time of sale. Rather, the record reflects that the Board looked to the evidence presented at trial, including the sales invoices, to determine whether, at the time of sale, there was any indication that the sale related to a COE contractor or known subcontractor in connection with a COE project.

Accordingly, we find the Board properly found that La. R.S. 47:301(10)(g) is a tax exclusion. Further, although the exclusion should be interpreted in favor of the taxpayer when there is a question as to its applicability, we find the evidence presented at trial must show, minimally, that the sales or purchases at issue are those generally encompassed within the exclusion. This assignment of error lacks merit.

Willow Bend further asserts on appeal generally that the Board erred in excluding certain testimony at trial. Specifically, Willow Bend, through various witnesses, attempted to introduce testimony concerning statements made to its representatives or employees by various purchasers/subcontractors to show that Willow Bend had knowledge that the dirt sold was intended for use in connection with COE projects.[5] As to those purchases, Willow Bend failed to properly

---

[5] For example, Mr. Vicknair attempted to testify as to his knowledge that certain companies performed work in connection with COE projects, to which the Collector objected. The Board sustained the objection and excluded the testimony of what Mr. Vicknair learned or was told by other companies as hearsay. Similarly, Matt Fletcher testified that he worked in Willow Bend's office. He attempted to testify as to what subcontractors and other customers told him about whether the dirt sold was purchased for COE projects. The testimony was excluded upon objection as hearsay.
The following exchange took place concerning one hearsay objection:
> JUDGE COLE: Sustained. There was no
> question asked and that is definitely hearsay.
> THE WITNESS: It's not hearsay, sir. They
> told us that.
> JUDGE COLE: That's the definition of hearsay, Mr. Fletcher.

introduce any documentary evidence to tie or relate the purchase with any COE project.

The Board applies the same rules of evidence as all district courts. *See* La. R.S. 47:1412.[6] Upon review of the transcript, we find the Board correctly found that statements made by purchasers/subcontractors to Willow Bend during sales transactions are hearsay statements not admissible in evidence. See La. C.E. arts. 801 and 802. Thus, this assignment of error lacks merit.[7]

Finally, Willow Bend contends that the evidence presented at trial was sufficient to show that all of its transactions or sales were related to a COE project and, thus, are not subject to sales and use tax under La. R.S. 47:301(10)(g). In its brief to this Court, Willow Bend does not point to any specific sales or contracts but rather generally contends that all of its sales were connected to a COE project.

In reviewing a decision of the Board, this Court should not set aside the Board's findings of fact on appeal unless they are manifestly erroneous in view of the evidence in the entire record. *Odebrecht Construction*, 182 So.3d at 139. Upon review of the record in this matter, we find the Board was not manifestly erroneous in its determination that, as to certain sales to contractors and subcontractors, the record is devoid of sufficient evidence to relate the sales to COE projects. The Board pointed out that, as to the sales of dirt to a known COE contractor where the invoice generally references a COE project name or code—even if the COE contract was never introduced into evidence—those sales would be excluded and no sales tax would be due. However, as to those sales with a generic references to a town or location (such as "Chalmette" or "airport"), or

---

[6] La. R.S. 47:1412 provides: The rules of evidence which the board shall adopt as those binding upon it shall be those rules of evidence followed in the district courts of Louisiana.

[7] The record further reflects that an "exemption certificate" and entire file related to one customer, Wood Resources, was excluded from evidence, as Willow Bend did not provide the documentation to opposing counsel until the middle of the trial. Although Willow Bend's appellate brief is somewhat ambiguous concerning its assignment of error related to excluded testimony or evidence, to the extent it seeks review of the Board's ruling on this issue, we find no error.

those invoices with no reference to any known COE project by a known COE contractor, we cannot find that the Board was manifestly erroneous in its determination that the evidence did not sufficiently show that those sales were related to or intended for future use in a COE project.[8] Thus, we find that the Board did not err in its finding that the evidence presented at trial did not show that such sales would fall within the scope of the La. R.S. 47:301(10)(g) exclusion.

For the foregoing reasons, we find the Board did not err in its judgment. Accordingly, the judgment of the Board is affirmed.

**<u>AFFIRMED</u>**

---

[8] The Board determined that the following companies had no connection to a COE project, based upon the testimony and evidence presented at trial: Affolter Construction ($23,446.19 in sales with no taxes remitted); Champion Construction ($4,496.59), Circle Construction ($42, 844.26); Dwayne Julia ($14.40); Grillot Construction ($58,339.37); Hensley R. Lee Contracting, Inc. ($44,557.95); Murphy Construction ($2,880.80); Oalmann Trucking ($757.15); Phillips and Jordan ($15,786.98); Target Construction ($12,994.42); Terry's Resource Management ($49,235.61); Westco ($142.50); and Wood Resources, L.L.C. ($40,580.48). The Board additionally found that Willow Bend collected but failed to remit a total of $121,009.75 in taxes from various customers; that portion of the judgment is not at issue in this appeal.

18-CA-660                                            10

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

MARY E. LEGNON
INTERIM CLERK OF COURT

CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **AUGUST 14, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

_____

**MARY E. LEGNON**
INTERIM CLERK OF COURT

## 18-CA-660

### E-NOTIFIED
BOARD OF TAX APPEAL (CLERK)
CHERYL M. KORNICK (APPELLANT)

PATRICK M. AMEDEE (APPELLEE)

RANDY J. MARSE, JR. (APPELLANT)

### MAILED
HONORABLE CADE R. COLE (DISTRICT JUDGE)
STATE OF LOUISIANA, BOARD OF TAX APPEALS
POST OFFICE BOX 3217
BATON ROUGE, LA 70821

ROBERT S. ANGELICO (APPELLANT)
JEFFREY BIRDSONG (APPELLANT)
ATTORNEYS AT LAW
701 POYDRAS STREET
SUITE 5000
NEW ORLEANS, LA 70139

CATHERINE MASTERSON (APPELLEE)
ATTORNEY AT LAW
POST OFFICE BOX 1092
THIBODAUX, LA 70302