PETTIGREW, J.
 

 |2In this matter, a home health care provider sought a refund of use taxes paid to the Louisiana Department of Revenue (“the Department”) in connection with its purchase of computer billing software. The Department denied the refund claim, and the provider appealed to the Louisiana Board of Tax Appeals (“the Board”). The Board ruled in favor of the provider, and the Department appealed the ruling to the trial court. From a judgment upholding the ruling of the Board, the Department has appealed.
 

 FACTS
 

 Defendant-appellee, Amedisys, Inc. (“Amedisys”), is a leading provider of home health care and hospice services. Amedisys is headquartered in Baton Rouge, Louisiana, and has approximately 14,500 employees in 520 offices, located in 37 states across the nation.
 

 During the mid-1990s, an employee of Amedisys developed a software program for Amedisys to use in-house for its billing and collections. Later in 1998, Amedisys executives elected to outsource its billing and collection services and turned these operations over to CareSouth Home Health Services, Inc. (“CareSouth”). Am-edisys further sold CareSouth the billing software Amedisys had developed for approximately $11,000,000.00.
 

 Subsequently, Amedisys became unhappy with the service provided to it by Care-South, and began negotiating to re-purchase its billing software and bring its billing and collection operations back in-house. In October 2001, Amedisys and CareSouth entered into a software licensing agreement (“the Agreement”) that effectively returned to Amedisys its billing software in order that Amedisys might resume its in-house billing and collection services. Due to the alleged inability of Amedisys to tender an $8,000,000.00 lump sum payment to CareSouth, the Agreement set forth a series of installment payments over a thirty-one month term. The Agreement further provided that upon payment of all license fees and provided no default occurred, Amedisys had the right to acquire the software license from Care-South upon payment to CareSouth of $1.00 at the termination of the Agreement.
 

 IsUnaware of the exclusion from Louisiana sales/use taxes for isolated or occasional sales, Amedisys paid taxes to the Department on a portion of the payments it made to CareSouth for the billing software. In October 2002, Amedisys was advised by its accountants that a purchase of the software was a non-taxable transaction. Amedisys thereafter filed a refund application with the Department in the amount of $205,548.48 for the amount of taxes it paid in connection with the payments Amedisys made to CareSouth. Am-edisys asserted that the transaction was excluded from tax as an isolated or occasional safe. Based upon its contention that the transaction at issue was a lease rather than a sale, the Department denied the refund application submitted by Amed-isys.
 

 Upon the Department’s denial of its refund application, Amedisys appealed the denial of its application to the Louisiana Board of Tax Appeals (“the Board”) for resolution of this matter. Following a hearing on November 12, 2008, the Board ruled in favor of Amedisys granting the refund requested.
 

 The Department filed a petition for judicial review with the Nineteenth Judicial
 
 *282
 
 District Court, which entered judgment upholding the decision of the Board. From this judgment, the Department has appealed.
 

 STANDARD OF REVIEW
 

 Pursuant to constitutional and statutory mandate, we review this case as a second court of appellate review. The Nineteenth Judicial District Court is vested with the power to review decisions of the Board. La. Const, art. V, § 16; La. R.S. 47:1434-1435. Thereafter, the ruling of the district court is subject to appellate review by suspensive appeal to this court in the exercise of its appellate jurisdiction over civil matters. La. Const, art. V, § 10; La. R.S. 47:1435.
 

 Judicial review of a decision of the Board is rendered upon the record as made up before the Board and is limited to facts on the record and questions of law.
 
 International Paper, Inc. v. Bridges,
 
 2007-1151, p. 9 (La.1/16/08), 972 So.2d 1121, 1127,
 
 quoting, St. Pierre's Fabrication and Welding, Inc. v. McNamara,
 
 495 So.2d 1295 (La.1986);
 
 see
 
 La. R.S. 47:1434. The Board’s findings of fact should be accepted where there is substantial evidence in the record to support them and should not be set |4aside unless they are manifestly erroneous in view of the evidence on the entire record.
 
 International Paper, Inc.,
 
 07-1151 at p. 9; 972 So.2d at 1127-1128. Furthermore, if the Board has correctly applied the law and adhered to correct procedural standards, its judgment should be affirmed.
 
 International Paper, Inc.,
 
 07-1151 at pp. 10; 972 So.2d at 1128.
 

 With these legal precepts in mind, we will' examine whether the district court erred in affirming the Board’s determination that the Agreement between Amedi-sys and CareSouth constituted a sale rather than a lease with an option to purchase, which entitled Amedisys to a refund of taxes pursuant to La. R.S. 47:301(10)(c)(ii)(bb).
 

 DISCUSSION
 

 A tax is levied on the sale at retail of each item or article of tangible personal property. La. R.S. 47:302(A). “Sale” means any transfer of title or possession, or both, of tangible personal property, for a consideration. La. R.S. 47:301(12). Said statute further provides, “[a] transaction whereby the possession of property is transferred but the seller retains title as security for the payment of the price shall be deemed a sale.” Id.
 

 In connection with its appeal in this matter, the Department contends the Board incorrectly applied the law and found the Agreement to be a sale, when, the Department claims, the Agreement was actually a lease with an option to purchase. The Department further claims that as the isolated or occasional sale exclusion set forth in La. R.S. 47:301(10)(c)(ii)(bb) does not include a reference to “lease” or “license,” the exclusion does not apply and Amedisys is not entitled to a refund of the taxes paid.
 

 Louisiana Revised Statute 47:301(7)(a) defines, in pertinent part, “[ljease or rental” as the leasing or renting of tangible pei'sonal property and the possession or use thereof by the lessee or renter, for a consideration, without the transfer of the title of such property. The Department further argues that the payment of license fees by Amedisys pursuant to the terms of the Agreement entitled Amedisys to continued use of the software, but was insufficient to transfer title of the software to Amedisys. It is the position of the Department that title to the software could only be transferred after the termination date of the Agreement through a second, and completely discretionary, phase 15of the Agreement that set forth an option to
 
 *283
 
 acquire title to the software for the additional consideration of $1.00.
 

 In support of its contention that the Agreement was actually a lease with an option to purchase, the Department cites and relies upon
 
 Bamma Leasing Company, Inc. v. Secretary of Department of Revenue and Taxation,
 
 93-881 (La.App. 5 Cir. 9/14/94), 646 So.2d 917,
 
 ivrit denied,
 
 94-2505 (La.12/9/94), 648 So.2d 380. Bam-ma was a Louisiana corporation that provided financing to purchasers of automobiles (i.e., consumers) through documents titled “Leases” that Bamma contended were financed leases or conditional sales not subject to additional lease taxes pursuant to La. R.S. 47:302(B).
 

 Under the facts presented in
 
 Bamma,
 
 a consumer would select an automobile and arrange financing with the dealership through Bamma. In accordance with La. R.S. 47:302(A), Bamma paid the initial sales taxes at the time of registration and acquisition of the automobile from the dealership. Bamma then entered into a “lease” with the consumer, with the title of the automobile remaining in Bamma’s name until the provisions of the lease were fulfilled. At the end of the lease term, the lessee had the option to purchase the automobile for the consideration of $1.00, which was not always demanded by Bam-ma. If, upon the fulfillment of the lease, the lessee desired to transfer title to himself, a second bill of sale was drawn up, and the lessee, now the purchaser, was responsible for the payment of the tax previously paid by Bamma. There was also testimony at trial to the effect that if, upon a lessee’s default, Bamma was forced to repossess an automobile, Bamma did not file suit against the lessee for the remaining lease payments. In such instances, the automobile was sold, usually for a loss, to a used car dealer.
 

 It was this point, the trial court noted in its oral reasons for judgment, which distinguished the
 
 Bamma
 
 case from the facts presented in the case presently before us. The trial court noted that unlike
 
 Bamma,
 
 where a lessee in default was not held responsible for the remaining lease payments, Amedisys, under the terms of the | (Agreement, always remained obligated to make all of the payments listed in the Agreement even in the event of default or termination.
 

 This finding is supported by our review of the Agreement, which provides, in pertinent part, as follows:
 

 VI. TERM, TERMINATION AND DEFAULT
 

 $ ‡ $ $
 

 6.2 The following shall constitute “events of default” ... hereunder: ... (4) any failure by Licensee [Amedisys] to pay the License Fees when due....
 

 6.3 Licensor [CareSouth] may terminate this Agreement, the License, or both, immediately and without further obligation to Licensee [Amedisys] upon the occurrence of an event of default. Termination shall not relieve Licensee [Amedisys] of its obligation to pay all amounts due and payable to Licensor [CareSouth] as of the date of termination, including, without limitation, all amounts accelerated pursuant to Section 6.5 hereof.
 

 $ ⅜ ⅜ ⅜
 

 6.5 In addition to any other remedies Licensor [CareSouth] may have, upon an event of default under this Agreement:
 

 (a) the aggregate of the License Fees due and payable to Licensor [Care-South] for the entire remainder of the term of this Agreement (together with any License Fees that may be past due
 
 *284
 
 hereunder) shall become immediately due and payable;
 

 [Underscoring supplied.]
 

 In addition, Schedule C of the Agreement set forth the schedule of payments Amedisys was to make to CareSouth. The payment schedule provided that five months into the thirty-one month agreement, Amedisys had paid forty-six percent (46%) of the total price specified to Care-South. Amedisys argues that the schedule of payments is further evidence that the parties intended for the transaction to be an owner-financed sale with a front-loading of payments within the first few months of the Agreement.
 

 Amedisys argues, and the trial court found, that the facts presented are more analogous to a conditional sale rather than a lease with an option to purchase. In reaching this determination, the trial court relied upon
 
 Pastorek v. Lanier Systems Company,
 
 249 So.2d 224 (La.App. 4 Cir. 1971). In
 
 Pastorek,
 
 the plaintiff, an attorney, demanded recission of a “safe” of an automatic copier and refund of an installment payment. The attorney had previously agreed to purchase the automatic copier on an installment plan and was told that upon payment of a stipulated number of “rental” |7payments he could exercise an option to purchase the copier for an additional $1.00. As the attorney was already leasing a competitive model, the evidence showed the attorney wished to purchase the copier, and at no time did he evince a desire to lease the machine. Nevertheless, the attorney thereafter signed a “lease contract,” which referred to him as “lessee/” the financing company as “lessor,” and the copier manufacturer as the “supplier” of the equipment.
 
 Pastorek,
 
 249 So.2d at 226.
 

 The copier immediately began to give trouble. The attorney became disenchanted with the machine and instructed his employees to discontinue using it. After writing to the financing company and the manufacturer, tendering the machine, and demanding cancellation of the contract, the attorney instituted suit.
 

 The trial court found, and the fourth circuit affirmed, that although referred to as a lease with an option to purchase, the agreement should more properly be described as a sale. In reaching this determination, the court in
 
 Pastorek
 
 opined:
 

 The distinction between a valid lease with an option to purchase and a disguised conditional sale is that in the former, there is an option to give additional consideration in order to purchase the leased item at the end of the contract term, while in the tatter, there is an obligation to pay the full price regardless of whether the option is exercised or not. The agreement here is a disguised conditional sale, since upon completion of the lease term, a payment of only $1.00 is required to exercise the option. The purpose was obviously to retain title until payment of the purchase price. Such a contract has been property held to still constitute a safe.
 
 Pastorek,
 
 249 So.2d at 227 (La.App. 4 Cir.1971) (Citations omitted).
 

 Based upon our review of the record before this court, we cannot say the trial court erred in affirming the Board’s ruling, which granted Amedisys a refund of sales taxes paid based upon its determination the transaction at issue was a sale rather than a lease with an option to purchase. Accordingly, we hereby affirm.
 

 CONCLUSION
 

 For the above and foregoing reasons, the trial court’s decision upholding the Board’s ruling granting Amedisys a refund of sales taxes paid, is hereby affirmed. Costs in the amount of 1,321.23 shall be
 
 *285
 
 assessed against the State of Louisiana, Department of Revenue.
 

 AFFIRMED.