VICTORY, J.
LWe granted this writ application to determine whether a wholesale dealer of smokeless tobacco products is liable for an excise tax pursuant to Louisiana’s Tobacco Tax Law, La. R.S. 47:841, et seq. Finding that La. R.S. 47:841 and 47:854 impose an excise tax of 20% on smokeless tobacco products to be paid by the dealer who first sells, uses, consumes, handles or distributes the product in Louisiana, we reverse the judgment of the court of appeal and remand the case to the court of appeal for a determination of all pretermitted issues.
FACTS AND PROCEDURAL HISTORY
McLane Southern, Inc. (“McLane”) is a wholesaler of tobacco products located in Mississippi that sells smokeless tobacco to retail establishments in Louisiana. McLane purchases its smokeless tobacco products from U.S. Smokeless Tobacco Brands, Inc. (“UST-Sales”), an affiliate of *481 the manufacturer, U.S. Smokeless Tobacco Manufacturing Company (“UST-Manufacturing”). UST-Manufacturing sells the smokeless tobacco to UST-Sales at one price and UST-Sales sells it to McLane at a higher price, which reflects UST-Sales’ operating costs, profit margins, and value from its marketing, distribution and advertising efforts. McLane also purchases smokeless tobacco from Conwood Sales Company, L.P., which acquires the product | ¿from the manufacturer, Conwood Company, L.P., in an arrangement identical to that of UST-Sales and UST-Manufacturing. In all cases, the sale of the smokeless tobacco to McLane occurs outside of Louisiana-it is shipped to McLane’s facility in Mississippi and then McLane brings it into Louisiana for sale to its retail customers.
McLane, as a Louisiana bonded permitted wholesale tobacco dealer for all tobacco products, has filed monthly tax reports and returns for its cigar, cigarette, smoking tobacco and smokeless tobacco sales and distribution activities in Louisiana. It has paid excise taxes on smokeless tobacco products since 2000, the first year that the tax was imposed on smokeless tobacco. In 2006, McLane filed a petition for refund of tobacco tax paid under protest relative to the smokeless tobacco it had sold in Louisiana in October 2006. Pursuant to an Agreement to Abide between the Department of Taxation (the “Department”) and McLane, McLane continued to pay the tax under protest and this suit covers McLane’s payments under protest for all months following October 2006. Initially, McLane admitted in its petition that it was the wholesale dealer responsible for the payment of the tax, but claimed that the 20% tax rate was to be applied to the price UST-Manufacturing charged UST-Sales for the product, and not, as claimed by the Department, the price UST-Sales charged McLane for the product. Further, McLane claimed that if the tax was based on the -price it paid UST-Sales for the product, then it was unconstitutional as violative of the Commerce Clause. Accordingly, McLane sought a refund of the difference. Two years later, in December 2008, McLane amended its petition to assert that it does not owe any excise tax as assessed by the Department because the Tobacco Tax Law does not impose liability for the payment of the tax on smokeless tobacco on any taxpayer, including McLane. McLane then began paying all the tax on smokeless tobacco launder protest. As of September 2011, McLane has paid $7,688,825.36 in tax under protest.
After discovery, the parties filed cross-motions for summary judgment contending no genuine issues of material fact existed and the legal issue related to the correct application/interpretation of the Tobacco Tax Law. McLane asserted that (1) no tobacco dealers, including McLane, are liable for the tax on smokeless tobacco; (2) the invoice price upon which the 20% rate is assessed is the price the intermediary seller paid for the product from the manufacturer; (3) if the invoice price is based on the price McLane paid for the product then it is unconstitutional. The Department asserted the opposite in its motion. After a hearing, the district court ruled in favor of the Department and granted its motion for summary judgment that (1) McLane is liable for the tax on smokeless tobacco products, (2) the invoice price is based on the price McLane paid for the product, and (3) basing the invoice price on the price McLane paid for the product is not unconstitutional. The district court dismissed McLane’s claim for refund of the taxes paid under protest with prejudice. The First Circuit Court of Appeal reversed, finding that McLane and all other tobacco dealers are not liable for the tobacco tax on smokeless tobacco products under the provisions of the Tobacco Tax *482 Law. McLane Southern, Inc. v. Bridges, 10-1259 (La.App. 1 Cir. 5/6/11), 64 So.3d 886. The First Circuit held the other issues surrounding the interpretation of the invoice price and the constitutionality of the definition of invoice price were moot given its determination that McLane was not liable for the tax. We granted the Department’s writ application to determine whether the Tobacco Tax Law imposes liability on dealers of smokeless tobacco products. McLane Southern, Inc. v. Bridges, 11-1141 (La.9/23/11), 70 So.3d 810.
| DISCUSSION
On motions for summary judgment, this Court reviews the record de novo to determine whether there is any genuine issue of material fact in dispute, and whether the movant is entitled to judgment as a matter of law. La. C.C.P. art. 966; Louisiana Safety Ass’n of Timbermen Self-Insurers Fund v. Louisiana Ins. Guar. Ass’n, 09-0023 (La.6/26/09), 17 So.3d 350, 353. There are no material issues of fact in dispute in this record and the sole issue before us is a question of law which seeks the correct interpretation of La. R.S. 47:841 and 47:854.
In 1932, the Legislature enacted the Louisiana Tobacco Tax Law, found in Sections 841-860 of Title 47 of the Revised Statutes. Acts 1932, No. 4. The Tobacco Tax Law was enacted to achieve two general purposes: the imposition of a tax upon the sale and distribution of tobacco products, and the regulation of those persons who engage in the sale and distribution of such products so as to insure collection of the tax. Southland Corp. v. Collector of Revenue for Louisiana, 321 So.2d 501, 502 (La.1975). La. R.S. 47:854 was enacted with the title “Declaration of intent and purpose of Chapter,” and provides in relevant part as follows:
It is the intent and purpose of this Chapter to levy an excise tax on all cigars, cigarettes and smoking tobacco, as defined in this Chapter, sold, used, consumed, handled or distributed in this state, except as provided in R.S. 47:855 and to collect same from the dealer who first sells, uses, consumes, handles or distributes the same in the State of Louisiana.
Acts 1932, No. 4, § 2. La. R.S. 47:841, entitled “Imposition of tax,” provided “[tjhere is hereby levied a tax upon the sale, use, consumption, handling, or distribution of all cigars, cigarettes and smoking tobacco, as defined herein, within the state of Louisiana, according to the classification and rates hereinafter set forth: ...” Acts 1932, No. 4, § 8. In 2000, La. R.S. 47:841 was amended to add “smokeless tobacco” | Bto the list of tobacco products to be taxed and to add a paragraph providing the rate at which smokeless tobacco was to be taxed. Acts 2000, No. 32, § 1. Accordingly, effective 2000, La. R.S. 47:841 now reads in pertinent part:
There is hereby levied a tax upon the sale, use, consumption, handling, or distribution of all cigars, cigarettes, and smoking and smokeless tobacco, as defined. herein, within the state of Louisiana, according to the classification and rates hereinafter set forth:
E. Smokeless tobacco. Upon smokeless tobacco, a tax of twenty percent of the invoice price as defined in this Chapter.
However, La. R.S. 47:854 was never amended to add “smokeless tobacco” to the list of tobacco products upon which it was the legislature’s “intent and purpose” to levy the tax.
*483 McLane argues that these statutes fail to impose liability upon any taxpayer to pay the tax levied as to smokeless tobacco because while La. R.S. 47:841 levies the tax on “smokeless” tobacco at the rate of 20%, that section does not specifically identify who must pay the tax. Further, La. R.S. 47:854, the only statute that imposes liability on a specific taxpayer, i.e., the “dealer who first sells, uses, consumes, handles or distributes the same in the State of Louisiana,” does not mention “smokeless tobacco.”[1] Thus, as a distributor of “smokeless tobacco,” McLane argues it is not a “dealer” from which the tax imposed by La. R.S. 47:841 can be collected.
“It is a fundamental principle of statutory interpretation that when a ‘law is clear and unambiguous and its application does not lead to absurd consequences, the |filaw shall be applied a written, and no further interpretation may be made in search of the intent of the legislature.’ ” Harrah’s Bossier City Inv. Co., LLC v. Bridges, 09-1916 (La.5/11/10), 41 So.3d 438, 446-447 (citing La. C.C. art. 9). This principle applies to tax statutes. Cleco Evangeline, LLC v. Louisiana Tax Com’n, 01-2162 (La.4/3/02), 813 So.2d 351, 354; Tarver v. E.I. Du Pont De Nemours and Co., 93-1005 (La.3/24/94), 634 So.2d 356, 358. When the law is not clear and unambiguous or its application leads to absurd consequences, we must rely on the secondary rules of statutory interpretation to discern the meaning of the statutes at issue. Id. The fundamental question in all cases of statutory interpretation is legislative intent and the ascertainment of the reason or reasons that prompted the Legislature to enact the law. Pumphrey v. City of New Orleans, 05-0979 (La.4/4/06), 925 So.2d 1202, 1210 (citing In re Succession of Boyter, 99-0761 (La.1/7/00), 756 So.2d 1122, 1128). The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. Id.; Stogner v. Stogner, 98-3044 (La.7/7/99), 739 So.2d 762, 766.
The meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the law and with the obvious intent of the Legislature in enacting it. Pumphrey, supra at 1210 (citing Boyter, supra at 1129; Stogner, supra at 766). The statute must, therefore, be applied and interpreted in a manner, which is consistent with logic and the presumed fair purpose and intention of the Legislature in passing it. Id. (Citing Boy-ter, supra at 1129.) This is because the rules of statutory construction require that the general intent and purpose of the Legislature in enacting the law must, if possible, be given effect. Id. Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result [ 7can be avoided. Id. It is likewise presumed that the intention of the legislative branch is to achieve a consistent body of law. Id. (Citing Stogner, supra at 766).
*484 This is not a case where the statutes at issue are unclear or ambiguous. This is a case where the wording is clear and the intent of the legislature is clear, yet the legislature did not correctly draft and amend all the necessary sections of the statutory scheme to reflect that intent. It is clear that the legislature intended to impose an excise tax on smokeless tobacco, as La. R.S. 47:841 states that directly. That statute further specifies the rate at which the tax is imposed, i.e., “twenty percent of the invoice price ...” La. R.S. 47:841(E). This tax is imposed on “the sale, use, consumption, handling, or distribution” of the smokeless tobacco. La. R.S. 47:841. However, it is also true that La. R.S. 47:854, the statute expressing the intent and purpose of the Tobacco Tax Law and specifying the party upon whom the excise tax on tobacco products is to be imposed, i.e., “the dealer who first ... distributes the same” in the state, was not amended to include smokeless tobacco. While both parties basically agree that this was a legislative mistake, McLane argues, and the court of appeal found, that courts cannot “correct an error in the Legislature’s expression of its intent” by supplying language to a statute. 64 So.3d at 892. In this specific case, we disagree.
Our fundamental duty, as the “ultimate arbiter of the meaning of the laws of this state,” is “to give effect to the legislature’s intent.” Harrah’s, supra at 447. After considering the Tobacco Tax Law in its entirety, we see that the obvious intent of the legislature is to place a 20% excise tax on the distribution of smokeless tobacco. This much is clear by reading La. R.S. 47:841 alone, which states that the tax is on the “sale, use, consumption, handling, or distribution ” of smokeless tobacco. The Department seeks to collect the tax on the distribution of the product, specifically |sfrom the dealer who first distributes the product in the state. This is the same party from whom the excise tax is collected on all other tobacco products pursuant to La. R.S. 47:854. While it seems that the tax can be collected from McLane as the distributor based on La. R.S. 47:841 alone, assuming that application of La. R.S. 47:854 is necessary, the rules of statutory construction require that we give effect to the legislative intent to tax the distribution of smokeless tobacco by placing a construction on La. R.S. 47:854 that is consistent with that obvious purpose and intent if possible. It is possible to do this by reading smokeless tobacco into the provisions of La. R.S. 47:854 that provide for the tax to be collected from the first distributor of the product in the state. This is in line with another cardinal rule of statutory interpretation that “it will not be presumed that the Legislature inserted idle, meaningless or superfluous language in the statute or that it intended for any part or provision of the statute to be meaningless, redundant, or useless.” ABL Management, Inc. v. Board of Sup’rs of Southern University, 00-0798 (La.11/28/00), 778 So.2d 131, 135; Pumphrey, supra at 1210 (courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided). Were we to accept McLane’s argument that because smokeless tobacco is not expressly listed in La. R.S. 47:854, neither McLane, nor anyone else, is liable for the tax renders the legislature’s amendment to La. R.S. 47:841 by Acts 2000 No. 32, § 1 meaningless and surplusage from the moment it was enacted.
Other fundamental rules of statutory construction lead to the same result. While the language of both 47:841 and 47:854 is clear, an application of 47:854 that does not include smokeless tobacco *485 would lead to absurd consequences. In order for a court to find a literal application results in “absurd consequences,” “there must be |9a determination by the court that the specific application at issue arising from the literal wording would, if judicially enforced, produce a factual result so inappropriate as to be deemed outside the ‘purpose’ of the law.” P. Raymond Lamonica and Jerry G. Jones, 20 Louisiana Civil Law Treatise: Legislative Law and Procedure, § 7.4 (2011 ed.). Here, a finding that no tax can be imposed on dealers of smokeless tobacco because the legislature failed to amend 47:854 to include smokeless tobacco would be a result outside the purpose of the Tobacco Tax Law as a whole, specifically the 2000 amendment to impose a tax on the distribution of smokeless tobacco.
Finally, even were we to find that the statutes were in conflict and thus unclear or ambiguous, application of the secondary rules of statutory construction would lead to the same result. La. R.S. 47:841 is the specific statute imposing a tax on smokeless tobacco, while La. R.S. 47:854 is the general statute expressing the “intent and purpose” of the Tobacco Tax Statutes. This Court has held that “it is a fundamental rule of statutory construction that when two statutes deal with the same subject matter, if there is a conflict, the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character.” Burge v. State, 10-2229 (La.2/11/11), 54 So.3d 1110, 1113. Further, this Court has provided that the latest expression of legislative will is considered controlling and prior enactments in conflict are considered as tacitly repealed in the absence of an express repealing clause. Pumphrey, supra. “The legislature is presumed to have acted with deliberation and to have enacted a statute in light of the preceding statutes involving the same subject matter.” Holly & Smith Architects, Inc. v. St. Helena Congregate Facility, Inc., 06-0582 (La.11/29/06), 943 So.2d 1037, 1045. Finally, recent statutory enactments support this view. In 2006, the Legislature, by Acts 2006, No. 826, § 3, enacted La. R.S. 24:177, which provides in part: “[t]he legislature is presumed to have enacted an article or statute in light of the preceding law involving the same subject matter and court decisions construing those articles or statutes, and where the new article or statute is worded differently from the preceding law, the legislature is presumed to have intended to change the law.” La. R.S. 24:177(C).
McLane argues that our reasoning in Cleco prohibits this result. In Cleco we stated that “[a]bsent evidence to the contrary, the language of the statute itself must clearly and unambiguously express the intent to apply to the property in question” and that “[u]nless the words imposing the tax are expressly in the statute, the tax cannot be imposed.” Cleco, supra at 355 (citing Hibernia Nat. Bank in New Orleans v. Louisiana Tax Com’n, 195 La. 43, 54, 196 So. 15, 18 (1940)). Further, we held that “taxing statutes must be strictly construed against the taxing authority; where a tax is susceptible of more than one reasonable interpretation, the construction favorable to the taxpayer is to be adopted.” Cleco, supra at 356 (citing Goudchaux/Maison Blanche, Inc. v. Broussard, 590 So.2d 1159, 1161 (La.1991)). The problem with this argument is that these rules specific to tax laws are applicable only where the laws are subject to more than one reasonable interpretation and the intent of the legislature is ambiguously expressed in the laws. Here, the intent of the legislature is obvious and the laws are subject to only one reasonable interpretation. Therefore, we reject *486 McLane’s argument that we must interpret the Tobacco Tax Law in a manner which would prohibit the Department from collecting excise tax from McLane, for there is no doubt that this is what the Legislature intended.
Having found that the trial court was correct in granting summary judgment in favor of the Department and holding McLane liable for the tax on its smokeless tobacco products, there remain two other assignments of error that McLane urged in In the court of appeal and to this Court, 1.e.: (1) if it is liable for the tax, the “invoice price” as defined by La. R.S. 47:842(12)[2] upon which the excise tax is imposed is the price McLane pays to its tobacco supplier, rather than the lower manufacturer’ net invoice price as invoiced by the manufacturer to McLane’s tobacco supplier; and (2) the district court erred as a matter of law in adopting the interpretation of La. R.S. 47:842(12) urged by the Department as this interpretation renders the Tobacco Tax Law unconstitutional under the Dormant Commerce Clause of the United States Constitution by discriminating against out-of-state wholesalers like McLane. The court of appeal found that by reversing the trial court’s judgment and rendering judgment in favor of McLane, these issues “are rendered moot.” 64 So.3d at 893, n. 6. Because we have reversed the court of appeal’s finding that McLane does not owe the excise tax, we remand the case to the court of appeal to consider these two pretermitted issues.
CONCLUSION
La. R.S. 47:841, as amended in 2000, imposes a 20% excise tax on the distribution of smokeless tobacco in this state. While La. R.S. 47:854, which authorizes the Department to collect the tax from the dealer who first distributes tobacco products in the state, was not likewise amended to include smokeless tobacco in the list of tobacco products to be taxed, it is beyond doubt that the legislature intended to impose the tax on the distribution of smokeless tobacco. It is our duty to give effect to that legislative intent. Further, we must not give a law an interpretation which makes any part superfluous of meaningless. Therefore, we interpret La. R.S. 47:841 and 854 as giving the Department the right to collect a 20% excise tax on 112McLane, as the dealer who first distributes smokeless tobacco in this state, and reverse the court of appeal’s judgment on this issue.
DECREE
For the reasons expressed herein, the judgment of the court of appeal is reversed and the trial court judgment granting the Department’s motion for summary judgment finding McLane liable for the tax on smokeless tobacco products is reinstated. The case is remanded to the court of appeal to consider McLane’s two remaining assignments of error.
REVERSED AND REMANDED.
KIMBALL, Chief Justice, dissents and assigns reasons.

. McLane also argues that "dealer” is defined in La. R.S. 47:842(4) as "every person who manufactures or purchases cigars, cigarettes or smoking tobacco for distribution, sale, use or consumption in the State of Louisiana,” and therefore a dealer of smokeless tobacco cannot be included in that definition. However, the prefatory phrase of La. R.S. 47:842 states that ”[a]s used in this Chapter, the following terms have the meaning ascribed to them in this Section, unless the context clearly indicates otherwise: ...” The context of the Tobacco Tax Law, specifically La. R.S. 47:841, indicates that dealers of smokeless tobacco are included in the tax scheme.

. La. R.S. 47:842(12) defines "invoice price” as "the manufacturers net invoiced price as invoiced to the Louisiana tobacco dealer, by the manufacturer, jobber, or other persons engaged in selling tobacco products in accordance with the tax levied by this chapter.”