PETTIGREW, J.
lain this case, Odebrecht Construction Company, Inc. (“Odebrecht”) sought a refund of sales and use taxes paid to the State of Louisiana, Department of Revenue (“the Department”), in connection with purchases of clay deposits used to construct hurricane protection levees under Odebrecht’s contract with the United States Army Corps of Engineers (“COE”). The Department denied the refund claim, and Odebrecht appealed to the Louisiana Board of Tax Appeals (“the Board”). The Board ruled in favor of Odébrecht, and the Department appealed the ruling to the trial court. From a judgment upholding the ruling of the Board, the Department has appealed. For the reasons that follow, we affirm the November 5, '2014 judgment of the trial court and issue this memorandum opinion in compliance with Uniform Rules-Courts of Appeal,’Rule 2-16.1(B).
FACTS AND PROCEDURAL HISTORY
According to the record, Odebrecht entered into a contract with the COE on July 27, 2007, whereby Odebrecht was to acquire clay and deliver'it'to the Lake Ca-taouatche Project job site for subsequent incorporation into a hurricane protection levee. The contract was on a standard COE form, and the terms were dictated by the United States Government and nonnegotiable -for contract bidders. During the bid process, Odebrecht had been given a list of preapproved burrow pits from which to choose, and River Birch was selected. That same'month, Odebrecht entered into a contract with River Birch, which' specifically recognized that Ode-brecht’s purchase of the clay was for use in the COE project. Pursuant to the River Birch contract, title to the clay passed to Odebrecht when the clay was taken from the River Birch site. '
Gustavo Silveira, an Odebrecht project manager responsible for the Lake Ca-taouatche Project, testified at length concerning the scope of work Odebrecht performed in connection with the COE and River Birch contracts. According to Mr. Silyeira, Odebrecht was contracted,by the COE to enlarge the already existing hurricane levee by adding approximately 2 million cubic yards of clay Into the levee. Mr. Silveira explained the process as follows: .
|sWe excavated the material [from the River Birch site], we spread the material for processing, extracting the moisture, [making] it to the right moisture content. We load[ed] it into our trucks, transported] it about five, six miles to the job site,"-dumped in place, and then spread it and' then we surveyed- that material on a monthly base so'[as] to receive payment.
With regard to the surveying process, Mr. Silveira indicated that the survey would generate a volume of material in cubic yards and that the COE relied upon the survey amount to pay Odebrecht. Likewise, the survey amount controlled the amount paid to River Birch by Odebrecht. Mr. Silveira described the transaction as a “pass-through ... a transparent contract between [Odebrecht], the [COE]; and ... River Birch.”
*134 ■ When asked about title to the clay once it was delivered to the job site, Mr. Sil-veira expressed that it was his understanding of the COE contract that once delivered to the job site, title to the clay passed to the COE before it was spread and compacted. In fact, Mr. Silveira explained that the COE bore the loss when clay, which had been delivered to the job site but not yet incorporated into the levee, was washed away by the rising tides of Hurricanes Ike and Gustav.
In connection with the River Birch contract, there were no sales and use taxes paid by Odebrecht to River Birch on the purchase of the clay. On May 3, 2010, Odebrecht was advised by the Department that it had been selected for an audit for January 1, 2007, through March 31, 2010. The audit revealed that no taxes had been paid by Odebrecht on the transactions between Odebrecht and River Birch. According to the record, the Department issued a Notice of Assessment dated December 15, 2010, notifying Ode-brecht that it owed $388,503.54. in sales taxes, and $174,673.87 in interest and penalties. Odebrecht requested and received a waiver of the delinquent penalty sum and subsequently paid $465,774.09 to the Department.[1]
Thereafter, on January 26, 2011, Ode-brecht filed a Claim for Refund of Taxes Paid with the Department, requesting a refund of the taxes paid based on what it believed was an erroneous assessment by the Department. By letter dated November 15, 2011, pOdebrecht received notice of the Department’s denial of same. Ode-brecht appealed the denial to the Board by filing a “Petition For Determination Of Overpayment And -Alternatively As Claim Against The State Of Louisiana.” Prior to answering the petition, the Department filed an exception raising the objection of lack of subject matter jurisdiction as to Odebrecht’s claim against the State. The Department also filed a separate motion to set aside the order previously granted by the Department approving the penalty waiver in favor of Odebrecht.
The matter was tried before the Board on May 14, 2013. Citing to La. R.S. 47:301(10)(g), Odebrecht argued that this situation fit exactly within the statute and that it was entitled to a refund of $387,544.22, plus interest and penalties paid.[2] Odebrecht conceded to a small portion of its refund claim, $959.00, an amount related to aerial photographs. The Department countered that La. R.S. 47:301(10)(g) did not apply to the transaction at issue because there was not a sale to the United States government.and because the levee was not a final product. On June 20, 2013, the Board rendered judgment in favor of Odebrecht and ordered the refund.sought, with interest as provided by law. The Board denied the relief sought by the Department, including the exception raising the objection of lack of subject matter jurisdiction and the motion to set aside the order approving the penalty waiver.
The Board made the following findings:
Taxpayer seeks • a refund of • $465,774.09 in sales taxes that it paid to *135 the Secretary. Taxpayer entered into a contract with the United States Army Corp of Engineers (COE) to build levees. Taxpayer, in furtherance of the contract with the COE, entered into a contract with a company named River Birch Incorporated. The contract with River Birch provided that Taxpayer could mine (dig up) clay from River Birch’s premises and store and dry the mined clay on River Birch’s premises. Taxpayer’s Exhibit 7. Taxpayer’s contract with River Birch specifically stated that the purchased clay was for its project with the COE, and that it was “made conditional upon the approval of River Birch by the U.S. Army Corps of | ^Engineers.” Id. at p. 4.- The contract with River Birch further provided that the “stored clay will become the property of OCI-[Taxpayer] after it is removed from River Birch’s premises.” Id. at p: 2
The contract between Taxpayer and COE provided in paragraph 52.245-2Cc)(4)(J):
“Title to material purchased from a vendor shall pass to and vest in the Government upon delivery of such material.”
There was also undisputed testimony that the COE accepted the risk of loss prior to completion of construction. The witness testified that some of the dirt was washed away in the middle of construction by a hurricane, arid the COE actually paid the Taxpayer for that material anyway because title had already passed to the U.S. Government immediately upon the clay’s arrival on the work site.
• La. R.S. 47:302, imposes the sales tax on a “sale at retail.” The transaction that the Secretary seeks to tax is the sale of the clay from River Birch to the Taxpayer.
Taxpayer’s petition originally asserted a- variety of different theories on why they did not owe this tax, but most of these arguments were successfully refuted by the Secretary. At the hearing, the Taxpayer only argued that it is entitled to a refund of the taxes and interest paid because of the exclusion found in La. R.S. 47:301(10)(g). That paragraph provides:
“The term ‘retail sale’ does not include a sale of corporeal movable property which is intended for .future sale to the United States government or its agencies, when the title to such property is transferred to the United States government or its agencies pri- • or to the incorporation of that proper- ' ty into-a final product.”
If the. provisions of .. La. , R.S. 47:301(10)(g) apply to the sale from River Birch to. Taxpayer, then it was a transaction that was excluded from Louisiana sales tax. There is no doubt that the sale was one for corporeal movable property, and that legal title passed to the United States prior to incorporation of the clay into the levee. However, the Secretary’s counsel argued that the levee was not a final product because the “final product” can only mean a movable (the levee that was ultimately constructed here is an immovable).
The contract between the Taxpayer and the COE, recited above, clearly states that the title- to the clay vests in the GOE upon its arrival at the construction site — while it is still a movable. There was no credible-evidence presented at the hearing to support the Secretary’s position that “final product,” as used in §§ 10(g), can only mean a movable. In enacting the exclusion, the Legislature knew what movable property was, it actually uses that term in the definition. The Legislature could have *136 used similar language concerning the incorporation into a final product [if] that was what it intended. :
§ 301(10) involves the definition Of a retail sale, and paragraph (g) specifically defines a category of transactions that are not included within the definition of “sale at retail.” 'This paragraph operates as exclusion not |nas a tax exemption. Since the subsection at issue is an ‘exclusion’ and not a tax exemption, therefore any question' about the applicability of the exclusion must be resolved in favor of the Taxpayer.
The Board disagrees with the, Secretary and finds that La. R.S. 47:301(10)(g) excludes the disputed transaction from taxation, and that the Taxpayer is therefore entitled to a refund of the tax it overpaid.
The Secretary also argues that the holdings of three cases would make the transactions at issue subject to sales tax. Two of those cases are: (1) Claiborne Sales Company, Inc. v. Collector or Revenue, 233 La. 1061, 99 So.2d 345 (1957) and (2) State v. J. Watts Kearny and Sons, 181 La. 554, 160 So. 77 (1935). Both of those cases dealt with “what is a sale at retail?” We agree that absent á statutory exclusion that this would have been a sale at retail. However, the Board has ruled that La. R.S. 47:301(10)(g) applies to this transaction, therefore it was not a retail sale due to the applicable exclusion under the law.
• The third case cited by the Secretary is McNamara v. The Electrode Corporation, 418 So.2d 652 (La.App. 1st Cir.1982). That case held, in relevant part, that, in the facts of that , case, “the substance of a contract, not the wording of it, nor the splitting or dividing up by the, contracting parties, is controlling. The taxpayer cannot defeat the Department’s collection of taxes by either the wording, form or label of a contract.”
The contention of the Secretary appears to be that the provision in the contract between the Taxpayer and the COE (whereby the .COE takes title to the clay upon delivery) is only present in the contract to make the transaction between the contracting parties defeat collection. The Board rejects this argument as nonsensical. The United States is exempt from payment of Louisiana sales and use tax under US. Const, art. VI, § 2.., An exempt party may designate a contractor as its agent so as to exempt direct purchases of materials. See e.g., F. Miller & Sons, Inc. v. Calcasieu Parish School Bd., 838 So.2d 1269 (La.2/25/03). The U.S. government did not make this contractor its agent, but that has nothing to do with the contractor’s own rights under §§ 10(g). The underlying facts support the Taxpayer’s position that there were independent reasons for the relevant contract language, .and that it was not wording to defeat sales tax.
The Exception of Lack of Subject Matter Jurisdiction is overruled.
The Secretary’s exception of lack of subject matter jurisdiction was overruled by the Board at its hearing on this matter. Jurisdiction over the subject matter is the legal power and authority to hear and determine a particular class of actions or proceedings. Smith v. Gretna Mach, and Iron Works, 617 So.2d 144, 145 (La.App. 5 Cir.1993). As with all exceptions, the movant bears the burden of proving the lack of jurisdiction. Id.
The Supreme Court has recognized that “the Board acts as a trial court in finding facts and applying the law..” St. Martin v. State, 09-935, p. 6 (La.12/1/09) 25 So.3d 736, 740. The Supreme Court also concluded that “jurisdiction to resolve tax related disputes is constitutionally and statutorily granted to the Board which is authorized to hear and decide *137 disputes and. render judgments.” Id. [at] p. 8, 25 So.3d at 741.
|7Following the Secretary’s denial of a refund claim, the Board has subject matter jurisdiction over “all matters relating to appeals ... for the determination of over-payments.” La. R.S. 47:1407, 47:1431, and 47:1625. The question of whether a provision of the law precludes a refund in a particular case is clearly a question that the Board has subject matter jurisdiction to decide when adjudicating the case on the merits.
The Taxpayer’s Refund is Granted.
Part of the Taxpayer’s request for refund of sales taxes included $900 for aerial photographs. The Taxpayer has conceded that it owed the tax on the photographs.
It is therefore adjudged that the Taxpayer is entitled to a refund of the taxes that it paid to the Secretary for which it seeks a refund, together with the inteiv est allowed by law, less the amount of taxes that it paid for the aerial photographs.
The Secretary’s Motion concerning the penalty waivers is Moot.
The Secretary has filed a pleading entitled Department of Revenue’s Motion To Set Aside Order Approving Penalty Waiver, The Secretary had granted to the Taxpayer a waiver of penalties ón January 11, 2011 which, on the recommendation of the Secretary, was approved by the Board. The Secretary now wants “an order to set aside'the ‘order’ approving the penalty waiver previously granted”. Because the Board has now ruled that the Taxpayer did not owe the taxes at issue, no penalties were due. The Secretary’s motion is now dismissed as moot.
Each of the parties is liable for their own cost of these proceedings.
Pursuant to La. R.S. 47:1434, the Department filed a petition with the Nineteenth. Judicial District Court, seeking judicial review of the Board’s decision. On March 31, 2014, the trial court heard argument on the issue and' took the matter under advisement. On November 5, 2014, the trial court signed a judgment affirming the June 20, 2013 rulings of the Board. Although the trial- court did not offer any written reasons for judgment, the following minute entry dated October 6, 2014, appears in the record:
The Court has carefully considered this matter [and] whether the purchase of clay from River Birch was a taxable transaction as a sale at retail pursuant to Louisiana Revised Statute 47:301(10)(G). It appears to this Court it is not a'sale at retail, and, therefore, is not subject to sales tax because the property was intended for future sale to the United States and title had passed to the United States when the property was still a movable. Specifically, the River Birch Contract provided that Ode-brecht[’s] purchase of the clay was intended for resale to the United States Army ’ Corps of Engineers, and the Corps of Engineers^] contract specifically provided that the United States ’took title to the clay when it was delivered to ■ the work site. This is clearly prior to it being incorporated into the Levee; thus, the clay was still a movable when title passed because it had not yet been incorporated into the final product, which was the levee. Therefore, the ruling of the [Board] of Tax Appeals |Rwas not manifestly erroneous and its ruling is hereby affirmed, Judgment to be signed accordingly. Notify Counsel.
The Department has appealed from the trial court’s Novémber 5, 2014 judgment, assigning the following specifications of error for our review:
*138 1. By failing to follow Louisiana’s long established rule that a contractor who purchases materials for a construction project does not resell them, but rather is the consumer or end user of the material,-the Board erred by finding that the future government sales tax exemption [La. R,S. 47:301(10)(g) ] applied.
2: Because retail sales are otherwise taxable events,- the Board erred by failing to classify La. R.S. 47:301(10)(g) as a tax exemption.
3. In failing to properly classify La. R.S. 47:301(10)(g) as a tax exemption, the Board failed to strictly construe the statutory provision and failed to require that Odebrecht overcome all doubt and establish clearly, unequivocally and affirmatively that the tax exemption applied.
4. The Board erred by finding that the construction contract contained a provision that directed the Contractor to purchase material for which the Government would reimburse the Contractor “as a direct item of cost.”
5.. The Board erred by finding the tax exemption applied because the contractor’s dumping in place of the soil at the levee site does not constitute delivery by a vendor,.-such that the parameters of La. R.S. 47:301(10)(g), when strictly construed, are not satisfied.
6. The Board erred by finding the tax exemption applied because delivery of the soil, which was done by dumping it at the site of the levee being rebuilt, constituted its incorporation into the levee ¡such that the parameters of La. R.S. 47:301(10)(g), when strictly construed, are not satisfied,
7. The Board erred in finding that there was substantial evidence to show that the COE was the owner of the soil before it was incorporated into the levee.
8. The Board erred by finding that the COE’s payment of that portion of the levee under -construction that was washed away in the hurricanes was evidence that ownership transferred before the soil was incorporated into the levee embankment.
9. By improperly finding the tax refund was owed, the Board erred by denying‘the Department’s Motion to Set Aside Order Approving Penalty Waiver as moot.
The majority of the Department’s arguments on appeal focus on the Board’s finding that La. R.S. 47:301(10)(g) was a tax exclusion rather than a tax exemption. The Department contends the provision is, in fact, a tax exemption and should be construed against the taxpayer in this instance. As argued by Odebrecht in brief to this court, the |9Pepartment makes a number of attempts at rewriting the facts of this case in an attempt to support its argument that the “contractor use tax” applies in this case and overrides La. R.S. 47:301(10)(g). The Department asserts that this court should reject the Boards factual findings that title to the clay passed to the COE before it was incorporated into the levee and should instead .adopt a different factual scenario based on the Department’s “after-the-fact re-interpretation” of the COE contract. In addition, the Department challenges the Board’s denial of its motion to set aside the order previously granted by the Department approving the penalty waiver in favor of Odebrecht. The Department argues that should Odebrecht be found to owe the tax, the Board’s denial of this motion was in error, and the Department’s right to seek such relief should be recognized.[3]
*139 STANDARD OF REVIEW
Pursuant to constitutional and statutory-mandate, we review this case as a second court of appellate review. The'Nineteenth Judicial District Court is vested with the power to review decisions of the Board. La. Const, art. V, § 16; La. R.S. 47:1434-1436. Thereafter,. the ruling .of the trial court .is subject to appellate review by suspensive appeal to this-court in the exercise of its appellate jurisdiction over civil matters. La, Const.-art. V, § 10; La. R.S. 47:1435.[4]
Judicial review by the trial court of a decision of the Board is rendered upon the record as made up before the Board and is limited to facts on -the record and questions of law. International Paper, Inc. v. Bridges, 2007-1151, p. 9 (La.1/16/08), 972 So.2d 1121, 1127; Bridges v. Amedisys, Inc., 2009-1971, p. 3 (La.App. 1 Cir. 6/7/10), 40 So.3d 280, 282; see also La. R.S. 47:1434. The Board’s findings of fact should be accepted where there is substantial evidence in the record- to support them Imand should not be set aside unless they are manifestly erroneous in view of the evidence in the entire record. International Paper, Inc., 2007-1151 at 9, 972 So.2d at 1127-1128; Bridges, 2009-1971 at 3-4, 40 So.3d at 282, With regard to questions of law, the judgment should be affirmed if the Board has correctly applied the law and has adhered to the correct procedural standards. Crawford v. American Nat. Petroleum Co., 2000-1063, p. 6 (La.App. 1 Cir. 12/28/01), 805 So.2d 371, 377., In our review of the district court’s decision, we are mindful of the standard of review required of that court.
DISCUSSION
At the hearing before the Board, both counsél for the Department and the Department’s primary witness conceded that La. R.S. 47:301(10)(g) was an exclusion. During questioning of Raymond Tangney, a' fact witness for the Department, the following colloquy occurred:
[BY COUNSEL FOR ODEBRECHT]:
Q ... All right. Would you look at (10)(G) with me and I want to talk — has ,: -the Department had occasion to apply (10)(G) before?
‘ A<: I’m sure I don’t know about every ■ case that the Department may have had to apply it. I can give you a little bit of historical information.
Q I didn’t ask that.
A Okay. Then I will have to answer-r — answer you withimmy experience, I don’t recall specifically where we had to apply it, I know what the — the thrust of-.the — or the thinking was—
Q*’ I didn’t ask you about the thinking.
A I understand that. 'I’m trying to answer’ your question without being interrupted. , But anyway, at the timé that the statute was enacted, I think the legislature had some specific instances in mind and I haven’t had any occasion to apply those.
, [COUNSEL .FOR ODEBRECHT]; I would again move to strike about — the testimony about what the legislature had in mind when the statute was enacted.
*140 [BY COUNSEL FOR ODE-BRECHT]:
Q Are you aware of any instance where a — the Department found that a transaction was not a sale at retail pursuant to (10)(G)?,
^[COUNSEL FOR THE DEPARTMENT]: I’m going to object to that as it has been asked and answered,
CHAIRMAN GRAPHIA:' I don’t think so. • ■ ■■
THE WITNESS: lam— ■
[COUNSEL FOR THE DEPARTMENT]: It has.
THE WITNESS: — most of the time not on the front lines where this statute would have been applied. So I’m not-aware of it, but that’s not to say there were none. I’m just saying, to answer your question, I’m not aware of any, or can’t recall any.
[BY COUNSEL FOR ODEBRECHT]:
Q Okay. Are you aware of any instance where, prior to this case, where the Department had to formulate- a position on its understanding of (10)(G)?
A I’m not aware of any instances where we’ve been asked for a Private Letter Ruling or anything related to that where — where—or written informal advice where it was issued and the Department would have enunciated a position on that.
Q Are you aware of any instance within the Department of Revenue where there have been — okay. Let me ask it in two parts. : ' •
First, are you aware of any instance where the Department has issued anything in writing in — discussing its understanding. of Section.(10)(G)?
[COUNSEL FOR THE DEPARTMENT]: I’m1 going to object to that again as asked and answered.
CHAIRMAN GRAPHIA: Overruled.
THE WITNESS: I don't — I think the — I’m not aware of any instances where we issued anything in writing. You know, it’s— , ⅝
: CHAIRMAN GRAPHIA; If that’s true, how can you testify:that as far as [the Department] is concerned product * means movable? Is that just scuttlebutt in the cafeteria, or is it some regulation or some policy, something written? If it’s not written down, how can you say to the Department product means movable?
THE WITNESS: I can only — Judge, I can only reiterate what I’ve — I’ve said that the—
CHAIRMAN GRAPHIA: But the point is, what do you base that on?
[COUNSEL FOR THE DEPARTMENT]: Because it’s an exclusion.
CHAIRMAN GRAPHIA: Hold on just a minute. You’re .not the witness. I will put you under oath if you like. ^[COUNSEL FOR THE DEPARTMENT], Okay. - • • , .
CHAIRMAN GRAPHIA: Okay. You understand what I’m driving at?
THE WITNESS: I understand, Judge Graphia. '
CHAIRMAN GRAPHIA: You’re testifying that—
THE WITNESS: I’m trying to—
CHAIRMAN GRAPHIA: — that word product in that-statute does not mean immovable, it means movable. But you cite no-law, no regulation, no letters, nothing in writing. So if that’s true, what do you base that on? That’s a key point in this case. What do you base it on?
THE WITNESS: I’m trying to—
CHAIRMAN GRAPHIA:. If you could show me a statute, you have made some points. Maybe even a' regulation *141 of the Department properly .enacted. But just based on — I want to know what you’re basing it on.
THE WITNESS: The — apparently, maybe I haven’t been as clear as I should be. A retail.sale—
CHAIRMAN GRAPHIA: That’s why I’m giving you an opportunity to clear It up. .
THE WITNESS: I appreciate that. I appreciate that. Retail sale is a sale of movable property. ■ It — the law is clear on that. Jf you look at 301—
CHAIRMAN GRAPHIA: Right. I got you on that
■ THE WITNESS: Okay.. And so this •is an exclusion. They are; saying that this particular sale of movable property is not going to be a retail sale that’s going into á final — final product sold to "the U.S. government. You don’t normally think of a product as being something immovable. I mean that’s — that’s . all I can tell you. That’s— . • ,.
CHAIRMAN GRAPHIA: Okay. I understand.
THE WITNESS: I mean,. I guess, the way we kind of look at things, Judge, at the Department,-if the legislature wanted to exempt construction.ma-. terials for use on federal projects, they would have been very explicit in saying, so and I don’t think they do that in this ' instance. "[Emphasis added.]
According to our review of the record, Odebrecht originally asserted several different theories of why the tax was not owed to the Department. However, the Board’s written reasons for ruling indicate that most of these arguments were successfully refuted by the Department, leaving only one issue for consideration at the |^hearing, ie., whether Odebrecht was entitled to a refund based on the exclusion found in La. R.S. 47:301(10)(g). After concluding that the Department was seeking to- tax the transaction between River Birch and Odebrecht, the Board went on to discuss La. R.S. 47:301(10)(g) and its application herein with regard to whether it was an exemption or an exclusion. As previously indicated, the Board noted as follows: , .
§ 47:301(10) involves the definition of a retail sale, and paragraph (g) specifically defines a category of transactions that are not included within the -definition of “sale at retail.” This paragraph operates as exclusion not as a "tax exemption. Since the subsection at issue is an ‘exclusion’ and not a tax-exemption, therefore any question about the -applicability of the exclusion must be re- ■ solved in favor of the Taxpayer.'
The Board disagrees with the Secretary and finds that La, R.S. 47:301(10)(g) excludes the disputed transaction from taxation, and that the Taxpayer is therefore entitled to a refund of the tax it overpaid.
In McLane Southern, Inc. v. Bridges, 2011-1141 (La.1/24/12), 84 So.3d 479, the Louisiana Supreme Court succinctly stated the requirements for the judicial interpretation of statutes:
“It is a fundamental principle of statutory interpretation that when a ‘law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied [as]
. written, and no further interpretation may be made in search of the intent of the legislature.’ ” This principle applies to tax statutes. When the law is not clear and unambiguous or its application leads to absurd consequences, we must rely on the secondary rules of statutory . interpretation to discern the meaning of the statutes at issue.- The fundamental question, in all .cases of statutory interpretation is legislative intent and the *142 ascertainment of the reason or reasons that prompted the Legislature to enact the law. The rules of statutory construction are designed to ascertain and ' enforce the intent of the Legislature.
The1 meaning and intent of a law is determined by considering the law in its entirety and all other laws on the same subject matter and placing a construction on the provision in question that is consistent with the express terms of the - law and with the obvious intent of the Legislature in enacting it. The statute must, therefore, be applied and interpreted in a manner, which is consistent with logic, and the presumed fair purpose and intention of the Legislature in passing it. This is because the rules of statutory construction .require that the general intent and purpose of the Legislature in enacting the law must, if possible, be given effect. Courts should give effect to all parts of a statute and should not give a statute an interpretation that makes any part superfluous or meaningless, if that result can be avoided. It is likewise presumed that the intention of the legislative branch is to achieve a consistent body of law.
McLane Southern, Inc., 2011-1141 at 5-7, 84 So.3d at 483 (citations omitted).
| uTax exemptions are strictly construed in favor of the Department and “must be clearly and unequivocally and affirmatively established” by the taxpayer. Exclusions, on the other hand, are construed liberally in favor of the taxpayers and against the taxing authority.-- Har-rah’s Bossier City Inv. Co., LLC v. Bridges, 2009-1916, p. 10 (La.5/11/10), 41 So.3d 438, 446. In Harrah’s Bossier City Inv. Co., LLC, the supreme court explained the difference between a tax exemption and a tax exclusion as follows:
According to the leading Louisiana sales tax treatise, a “tax exemption is a provision that exempts from tax a transaction that would, in the absence of the exemption, otherwise be subject to tax.'' That is, there has been a statutory decision not to tax a certain • transaction that is clearly within the ambit and authority of the taxing statutes to tax.”- Bruce J. Oreek, Louisiana Sales & Use Taxation (2d ed.1996), § 3.1. An exclusion, on the other hand, “relates to a transaction that is not taxable because it falls outside the scope of the statute giving rise to the tax, ab initio. Transactions excluded from the tax are those which, by the language of the statutes, are defined as beyond the reach of the tax.” Id. Oreck’s definitions have been widely adopted by Louisiana courts.
Harrah’s Bossier City Inv. Co., LLC, 2009-1916 at 9-10, 41 So.3d at 446 (footnote omitted).
Our courts have continued to apply the principle of statutory construction that, “Taxing statutes must be strictly 'construed against the taxing authority; where a tax statute is susceptible of more than one reasonable interpretation, the construction favorable to the taxpayer is to be adopted.” Cleco Evangeline, LLC v. Louisiana Tax Com’n, 2001-2162, p. 8 (La.4/3/02), 813 So.2d 351, 356.
Therefore, the task of the trial court was to apply the law as stated by the legislature and enlightened by the jurisprudence interpreting Louisiana’s taxation of goods sold at retail.
Louisiana Revised Statutes 47:302(A) states, in pertinent part, “There is hereby levied a tax upon the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state, of each item or article of tangible personal property, as defined herein.” (Emphasis added.)
*143 The definition for “sale at retail” is found in La. R.S. 47:301(10)(a)(i), which provides, in pertinent part, “Solely for the purposes of the imposition of the state sales and use tax, ‘retail sale’ or ‘sale at retail’ means a sale'to a consumer or to any other | ^person for any purpose other than for resale as tangible personal property.” (Emphasis added.)
As previously indicated, La. R.S. 47:301(10)(g) expressly defines a category of transactions that are not included within the definition of “sale at retail,” i.e., the sale of moveable property intended for future sale to the United States government when title to such property is transferred to the United States government prior to the incorporation of that property into a final product. The Department’s argument that Section 47:301(10)(g) is an exemption cannot be reconciled with the language of the statute. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation .may be made in search of the intent of the legislature. La. Civ.Code art. 9. “A statute must be applied and interpreted In a manner that is logical and consistent with the presumed fair purpose and intent of the legislature in enacting it. ■ The principal rule is the ‘text of a statute is considered the best evidence of legislative intent or will,’ ” Harrah’s Bossier City Inv. Co., LLC, 2009-1916 at 11, 41 So.3d at 447 (citations omitted). Based on the text of the statute, the Board did not err in finding that- Section 47:301(10)(g) is an exclusion.
However our analysis does not end here, as the Department attempts to argue that based on its “after-the-fact re-interpretation” of the COE contract, Odebrecht was a contractor and not a reseller of material that it purchased for use in its construction project. We find no merit to the Department’s arguments in-this regard and agree with the trial court’s finding that the Board’s ruling was not manifestly erroneous.
The COE contract clearly'’provided that title to the clay passed to the COE when it was delivered to the job site. As previously indicated, the COE assumed the risk of loss of the clay when hurricanes were approaching. Moreover, although the Department attempts to argue that title to the clay did not pass until progress payments were made to Odebrecht after the spreading and compacting of the clay, the evidence' simply does not support this theory. Rather, the facts show that Ode-brecht was reimbursed based on a survey of the amount of clay brought from River Birch. Mr. Silveira described this l1fias a “pass-through” or a “transparent contract” between Odebrecht, the COE, and River Birch.
After a thorough review of the entire record herein, we are unable to say that the Board was manifestly erroneous in concluding that La. R.S. 47:301(10)(g) applied to the transaction at issue, and therefore, it was not a retail sale pursuant to the applicable exclusion under the law. On review, considering the record herein and the contract at issue, we find no manifest error in the factual findings of the Board or in its application of law to these findings. The evidence in the record supports the Board’s finding that title to the clay passed to the COE prior to its incorporation in the levees. Moreover,-the record reveals that at all times pertinent hereto,’ the parties acted in accordance with the provisions of the 'Contract. The Board’s findings of facts-are adequately supported by undisputed evidence and should not be set aside. -
CONCLUSION
For the above and foregoing reasons, the trial court’s November 5, 2014 judg *144 ment upholding the Board’s ruling is hereby affirmed. Appeal costs in the amount of $7,350.00 are assessed against the State of Louisiana, Department of Revenue.
AFFIRMED.
CRAIN, J., dissents and assigns reasons. •

. According to the record, on January 11, 2011, Cynthia Bridges, Secretary of the'Department, approved Odebrecht’s penalty waiver request for "reasonable cause,” resulting in the waiver of a $97,125.93 penalty.

. Louisiana Revised Statutes 47:301(10)(g) provides as follows;
(g) The .term "retail sale” does not include a sale of corporeal movable property which is intended for future sale to the United States government or its agencies, when title to such property is transferred to the United States government or its agencies prior to the incorporation of that property into a final product.

. Because we agree with the Board that Ode-brecht was entitled to the refund ordered, we likewise agree with the Board’s conclusion *139 that the Department's motion concerning the penalty waiver is moot.

. At the time the trial court heard this matter, the Nineteenth judicial District Court was vested with authority to review Board decisions by the cited constitutional provision and statutes. However, the cited statutes were revised by Acts 2014; No. 198 § 1, effective * July 1, 2014 (as well as by Acts 2013, No. 210),. and now provide that judicial review of the Board’s decisions lie with the appellate courts.